HOFFMAN v GARDEN CITY HOSPITAL-OSTEOPATHIC

Docket No. 52334. Submitted December 1, 1981, at Detroit.—Decided May 4, 1982. Leave to appeal applied for.

   Stephen M. J. Hoffman, D.O., and Ronald J. Rasansky, D.O., brought an action against Garden City Hospital-Osteopathic and its board of trustees and staff physicians. Plaintiffs had been denied staff privileges at the hospital, which is a private, nonprofit osteopathic hospital. Plaintiffs alleged that the decision was arbitrary, capricious and unreasonable and that the defendants individually and collectively were acting in restraint of trade. The defendants brought a motion for involuntary dismissal, which was granted by the Wayne Circuit Court, Daniel J. Van Antwerp, J. Plaintiffs appeal. *Held:*

   1. The decisions of the governing body of a private hospital in denying staff privileges to physicians are not subject to judicial review.

   2. The trial court's conclusion that the defendants had not engaged in an unreasonable restraint of trade was not clearly erroneous.

   Affirmed.

1. HOSPITALS — PHYSICIANS AND SURGEONS — PRIVATE HOSPITALS.

   The decisions of the governing body of a private hospital in refusing to appoint a physician to its medical staff, declining to renew an appointment that has expired, or excluding any physician or surgeon from practicing in the hospital are not subject to judicial review.

2. TRADE REGULATION — RESTRAINT OF TRADE — RULE OF REASON.

   An action alleging a restraint of trade is to be decided using a rule of reason; factors to be considered include the facts peculiar to the business involved, the condition of the business before and after the alleged restraint, the nature of the re-

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am Jur 2d, Hospitals and Asylums §§ 8-11.
[2] 54 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 447, 457.
[3] 4 Am Jur 2d, Appeal and Error §§ 105, 848.

straint, the effect of the restraint, the history of the restraint, the evil believed to exist, the reason for adopting a particular remedy, and the purpose sought to be obtained.

3. APPEAL — DISMISSAL — COURT RULES.

A trial court's determination in ruling on a motion for an involuntary dismissal in a case tried without a jury will not be overturned on appeal unless it is clearly erroneous (GCR 1963, 504.2).

*Frimet, Bellamy, Gilchrist & Jehle, P.C.* (by *Alan G. Gilchrist* and *James R. Lites)*, for plaintiff.

*Dice, Sweeney, Sullivan & Feikens, P.C.* (by *Jon Feikens* and *Bruce A. VandeVusse); Hyman, Gurwin, Nachman, Friedman & Winkleman* (by *Roger H. Leemis)*, for defendant.

Before: DANHOF, C.J., and J. H. GILLIS and BRONSON, JJ.

J. H. GILLIS, J. Plaintiffs appeal as of right from a judgment of involuntary dismissal entered by the trial court judge pursuant to GCR 1963, 504.2. The action arises out of a decision denying staff privileges to plaintiffs made by the governing board of a private hospital.

Plaintiff Hoffman is an osteopathic physician certified as a subspecialist in gastroenterology. Plaintiff Rasansky is also an osteopathic physician who, at the time of trial, had not yet been board certified in gastroenterology although certification was expected shortly. The individually named defendants are either members of the defendant Garden City Hospital's board of trustees or are staff physicians at the hospital.

The defendant hospital is a nonprofit licensed osteopathic hospital located on the west side of the Detroit metropolitan area. It has received Hill-Burton funds from the federal government on two

occasions: $600,000 in 1959-1960 and $150,000 in 1962-1963. Federal public works accelerated program funds of $750,000 were received in 1965. A community fund drive in 1952 resulted in a $130,-000 contribution to the hospital. The hospital is tax exempt as a charitable institution. Medicare and Medicaid patients make up approximately one-third of the total number of patients at the hospital.

Both Hoffman and Rasansky applied for staff privileges at the hospital in September of 1978. Their applications were processed in the usual manner. Dr. Rasansky was interviewed by the hospital's credentials committee in October and by its department of internal medicine in December. The questions asked at these meetings concerned Dr. Rasansky's credentials, his reasons for requesting staff privileges, what services he could provide to the hospital and his intentions with respect to the amount of time he would devote to the hospital.

Dr. Hoffman's application proceeded in the same manner as Rasansky's but with an additional opportunity for an interview before the board of trustees. At this interview Dr. Hoffman was accompanied by his own counsel and made both written and oral presentations.

The board of trustees denied staff privileges to plaintiffs based upon a determination of lack of need. This decision was in accord with the recommendation of both the credentials committee and the department of internal medicine.

Defendant Garden City Hospital-Osteopathic has no physicians who have completed a fellowship program in gastroenterology. However, Dr. Janet Hardie, a staff physician at the hospital and chairperson of the department of internal medicine,

held a practice of which 50% to 60% focused on gastroenterology. She intended to increase the amount of time she would spend in gastroenterology and by the time of trial 70% of her practice was in that area. Dr. Hardie testified that there was an indication, not necessarily a plan, within the hospital for her to focus on gastroenterology and two other physicians to subspecialize in cardiology and pulmonary medicine. Dr. Hardie is not board certified in gastroenterology.

The testimony at trial indicated that there are only 16 or 17 board certified osteopathic gastroenterologists in the United States. Although subspecialties are well established in the allopathic area of the medical profession, subspecialties in the osteopathic field have arisen only in the last ten years.

Upon the denial of staff privileges to them, plaintiffs filed suit claiming the decision was arbitrary, capricious and unreasonable in that it was the fulfillment of a conspiracy to protect the financial interests of the individual staff members. Plaintiffs also claimed that the defendants individually and collectively through explicit and implicit agreements were in violation of the prohibition of trusts, monopolies and combinations embodied in MCL 445.701 *et seq.;* MSA 28.31 *et seq.*[1] After presentation of plaintiffs' evidence, a motion for involuntary dismissal pursuant to GCR 1963, 504.2 was brought on behalf of all defendants. The trial judge issued detailed findings of fact and conclusions of law in granting defendants' motion.

Plaintiffs do not argue that the receipt of federal and local public funds by this private hospital transforms the hospital's action into state action.

---

[1] Several other theories were alleged. Plaintiffs have not appealed the trial court's decision denying recovery on those theories.

Rather plaintiffs argue that this private hospital is so "affected with a public interest" as to require that its decisions on staff privileges be subject to judicial review in order to protect the public.

There are no reported cases on this issue in Michigan although our courts have dealt with it in terms of public hospitals. In *Milford v People's Community Hospital Authority*, 380 Mich 49; 155 NW2d 835 (1968), the Court found a denial of due process when a public hospital restricted the privileges of a staff physician without proper standards. See also *Touchton v River Dist Community Hospital*, 76 Mich App 251; 256 NW2d 455 (1977). However, the Court in *Milford* was careful to note the public/private distinction:

"It is to be noted that we deal here with a public hospital authority and not with a private or charitable institution." *Milford, supra,* 57.

The theory that a private hospital holds a fiduciary duty to exercise its staff decisions reasonably and for the public good apparently finds its root in *Greisman v Newcomb Hospital*, 40 NJ 389; 192 A2d 817 (1963). In that case a private hospital refused to accept an application for admission to its courtesy staff from an osteopathic physician. The hospital's bylaws required that all applicants be graduates of a medical school approved by the American Medical Association. The AMA did not approve schools of osteopathy. The hospital was the only one in the Vineland metropolitan area. It was a nonprofit corporation governed by a board of trustees. It had received city, county and federal Hill-Burton Act funds.

The plaintiff filed suit attacking the validity of the bylaws provision. The defendants argued the hospital was private and could exercise its discre-

tion without judicial interference. The Court rejected the argument, finding instead that the hospital was so "affected with a public interest" as to allow judicial intervention when appropriate. Although *Greisman* dealt solely with a bylaw provision it has subsequently been applied to discretionary decisions. *Davis v Morristown Memorial Hospital,* 106 NJ Super 33; 254 A2d 125 (1969).

Plaintiffs in the instant case urge an explicit adoption of the *Greisman* rationale. *Greisman* represents the minority viewpoint.[2] Most jurisdictions remain faithful to the general rule that a private hospital has the power to appoint and remove members at will without judicial intervention.

In one of the earlier and one of the strongest statements on this issue, the Court in *Shulman v Washington Hospital Center,* 222 F Supp 59 (D DC, 1963), *remanded with instructions* 121 US App DC 64; 348 F2d 70 (1965), *aff'd on reh* 319 F Supp 252 (D DC, 1970), concluded that the decisions of the governing bodies of private hospitals are not subject to judicial review. As in the case at bar, *Shulman* involved a suit against a private hospital questioning the power and authority of a hospital to preclude a physician from membership on the staff of the hospital. The Court stated:

"We now reach the specific question involved in the case at bar, namely, whether a private hospital has power to appoint and remove members of its medical staff at will, and whether it has authority to exclude in its discretion members of the medical profession from practising in the hospital. The overwhelming weight of authority, almost approaching unanimity, is to the effect that such power and authority exist. The rule is

[2] See Anno: *Exclusion of or discrimination against physician or surgeon by hospital,* 37 ALR3d 645.

well established that a private hospital has a right to exclude any physician from practising therein. The action of hospital authorities in refusing to appoint a physician or surgeon to its medical staff, or declining to renew an appointment that has expired, or excluding any physician or surgeon from practising in the hospital, is not subject to judicial review. The decision of the hospital authorities in such matters is final." 222 F Supp 63.

We choose to follow *Shulman* and therefore decline the invitation to review the defendant hospital's reasons for denying staff privileges to plaintiffs.

We next address plaintiffs' restraint of trade claim. It is apparent that whether the action is pled under the statute, MCL 445.762; MSA 28.62, or under the common law, the rule of reason applies. *Barrows v Grand Rapids Real Estate Board,* 51 Mich App 75; 214 NW2d 532 (1974). The trial court announced that it had considered the various factors discussed in *Barrows, supra.* Specifically, the court indicated that it had considered the facts peculiar to the business to which the restraint is allegedly applied, the condition of the business before and after the restraint was allegedly imposed, the nature of the restraint, the effect, both actual and probable, of the alleged restraint, the history of the alleged restraint, the evil believed to exist, the reason for adopting the particular remedy and the purpose sought to be obtained. After considering all of these factors the court concluded that there had not been an unreasonable restraint of trade.

This decision was reached upon defendant's motion for involuntary dismissal. The standard for review by an appellate court of a trial court's grant of such motion was set forth in *Warren v*

*June's Mobile Home Village & Sales, Inc,* 66 Mich App 386, 389-390; 239 NW2d 380 (1976):

"In ruling on a motion to dismiss in a case tried without a jury, the trial court does not, as it would in a motion for directed verdict, view the evidence in a light most favorable to the plaintiff. *Illenden v Illenden,* 46 Mich App 710; 208 NW2d 565 (1973). Under GCR 1963, 504.2, rather, acting as a trier of fact, it judges credibility and weighs the evidence and decides the case on the merits. As such, its determination will not be overturned on appeal unless it is clearly erroneous, *i.e.,* the evidence manifestly preponderates contrary to its decision. *Buckingham Tool Corp v Evans,* 35 Mich App 74; 192 NW2d 362 (1971)."

We find that the trial court's decision was not clearly erroneous.

Affirmed.