**Chamin SARIN, Plaintiff-Appellant,**

v.

**SAMARITAN HEALTH CENTER, a Michigan corporation; Sister Julie Hyer; Melvin Hollowell; Maurice Richards; Rufino V. Lamoste; John Feemster; Alfredo Arriola and John R. McIntyre, Defendants-Appellees.**

No. 86–1236.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 22, 1987.

Decided March 11, 1987.

Boyd S. Lemon, argued, Los Angeles, Cal., George A. Googasin, Bloomfield Hills, Mich., for plaintiff-appellant.

David A. Ettinger, argued, Detroit, Mich., Anthony A. Derezinski, Farmington Hills, Mich., for defendants-appellees.

Before KEITH, KRUPANSKY and GUY, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff, Dr. Chamin Sarin, appeals the district court's grant of summary judgment in favor of defendants, Samaritan Health Center, and several individuals who are affiliated with Samaritan. Plaintiff's complaint alleges a variety of federal and state law claims which are based on the termination of plaintiff's staff privileges at Samaritan Health Center. For the following reasons, the entry of summary judgment is affirmed.

Plaintiff, a general and vascular surgeon, maintains staff privileges at several hospitals in the Detroit metropolitan area including defendant Samaritan Health Center.[1] Plaintiff's staff privileges at Samaritan were suspended on November 28, 1983, based on the recommendation of the chairman of surgery, Dr. Arriola. Dr. Arriola determined that plaintiff had failed to demonstrate the minimal level of professional

---

1. Plaintiff was allowed to perform operations at Southwest Detroit Hospital, Doctors Hospital, Kern Hospital, Lakeshore Hospital, People's Community Hospital, Plymouth General Hospital, Brent General Hospital and Detroit Receiving Hospital.

competence required of staff surgeons at Samaritan. On December 21, 1983, the Medical Executive Committee upheld the summary suspension of plaintiff's privileges. The committee also directed Dr. Arriola to appoint an Ad Hoc Committee to conduct further investigations. The Ad Hoc Committee reviewed several operations performed by the plaintiff at Samaritan and found problems in certain cases relating to plaintiff's competence and ability. Based on the results of this investigation, the Ad Hoc Committee recommended that plaintiff's privileges be terminated.

On January 25, 1985, the Medical Executive Committee reviewed the findings of the Ad Hoc Committee and agreed that there were serious problems with plaintiff's competence; however, it recommended that the restrictions should only apply to plaintiff's privilege to perform vascular surgery and sympathectomies. Plaintiff was then given an opportunity to present his case with the assistance of counsel before the Fair Hearing Panel. After consideration of the evidence, the Panel recommended the complete termination of plaintiff's medical staff privileges and membership. This decision was reviewed by the Appellate Review Board which also recommended the complete termination of plaintiff's staff privileges. On November 29, 1984, the Divisional Board of Samaritan Hospital informed plaintiff of its final decision terminating his privileges. The official reason given was that the level of his professional competence was contrary to the interest of patient care at Samaritan Health Center.

On March 12, 1985, plaintiff filed a five-count complaint in federal court alleging that defendants' actions violated: (1) the Sherman Anti-Trust Act, 15 U.S.C. § 1, *et seq.*; (2) hospital by-laws, rules, and regulations; (3) Michigan antitrust laws, Mich. Comp.Laws Ann. § 445.701, *et seq.*; and (4) his due process rights under the Michigan and United States Constitutions. Plaintiff also alleged a state law tort claim for intentional interference with advantageous business relations. In granting defendants' motion for summary judgment, the district court ruled that defendants' peer review process was mandated by state law and therefore fell within the "state action" exemption to federal antitrust laws. The district court went on to conclude that defendants' termination of plaintiff's staff privileges was also exempt from challenge under the Michigan antitrust laws. The plaintiff's claims concerning the hospital by-laws and due process were deemed withdrawn because the district court judge found that plaintiff had failed to address these arguments in his response to defendants' motion for summary judgment. Finally, the district court dismissed plaintiff's state law tort claim for lack of jurisdiction.

## I.

As previously noted, the district court found that the peer review process fell within the state action exemption to federal antitrust laws. In support of its conclusion, the district court relied on a decision rendered by the Seventh Circuit Court of Appeals in *Marrese v. Interqual, Inc.*, 748 F.2d 373 (7th Cir.1984), *cert. denied*, 472 U.S. 1027, 105 S.Ct. 3501, 87 L.Ed.2d 632 (1985), holding that the denial of a doctor's staff privileges was exempt from federal antitrust scrutiny because the medical staff had acted pursuant to Indiana's comprehensive statutory scheme of medical peer review. *Id.* at 395.

This court has recently published an opinion which we find dispositive with respect to the federal antitrust claims in this case. *See Stone v. William Beaumont Hospital*, 782 F.2d 609 (6th Cir.1986). Therefore, in affirming the district court's grant of summary judgment against the plaintiff, we rely on the *Stone* rationale in addition to the reasoning of the court below.

The factual circumstances which gave rise to plaintiff's claim in the instant case are remarkably similar to the facts present in *Stone v. William Beaumont Hospital.* In *Stone*, a doctor alleged that the denial of his application for staff privileges at a Detroit area hospital constituted a violation of the Sherman Anti-Trust Act. The district court granted the hospital's motion for

summary judgment and this court affirmed, finding that plaintiff had failed to establish a sufficient nexus with interstate commerce. In reaching this conclusion, we relied on the United States Supreme Court's opinion in *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), wherein the Court set forth the "jurisdictional" prerequisites for a claim under the Sherman Act. Justice Burger, writing for a unanimous Court, stated:

> Although the cases demonstrate the breadth of Sherman Act prohibitions, jurisdiction may not be invoked under that statute unless the relevant aspect of interstate commerce is identified; it is not sufficient merely to rely on identification of a relevant local activity and to presume an interrelationship with some unspecified aspect of interstate commerce. To establish jurisdiction a plaintiff must allege the critical relationship in the pleadings and if these allegations are controverted must proceed to demonstrate by submission of evidence beyond the pleadings either that the defendants' activity is itself in interstate commerce or, if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce.

444 U.S. at 242, 100 S.Ct. at 509 (citations omitted). Later in the opinion, Justice Burger further stated, "To establish federal jurisdiction in this case, there remains only the requirement that respondents' activities which allegedly have been infected by a price-fixing conspiracy be shown 'as a matter of practical economics' to have a not insubstantial effect on the interstate com-

merce involved." *Id.* at 246, 100 S.Ct. at 511 (citations omitted).

In *Stone*, this court adopted the Second Circuit's interpretation of *McLain* finding that "[a] plaintiff must allege sufficient facts concerning the alleged violations and its likely effect on interstate commerce to support an inference that defendants' activities infected by illegality either have had or can reasonably be expected to have a not insubstantial effect on commerce." *Stone*, 782 F.2d at 614 (quoting *Furlong v. Long Island College Hospital*, 710 F.2d 922, 926 (2d Cir.1983)).[2] In light of this standard, this court held that Dr. Stone failed to satisfy the interstate commerce requirement where the gravamen of his complaint was that he was denied the privilege of performing operations at a local hospital "two or three times a month." 782 F.2d at 614.

■ In the instant case, the record reveals that Dr. Sarin performed on the average less than one operation a week at Samaritan Health Center. Moreover, Dr. Sarin continued to maintain privileges at several other hospitals in the metropolitan Detroit area. Based on the undisputed facts in the record, we find that the denial of plaintiff's staff privileges at Samaritan could not have had a more than *de minimus* effect on interstate commerce. Plaintiff has failed to show that defendants' allegedly wrongful activity has, " 'as a matter of practical economics' ... a not insubstantial effect on interstate commerce." *McLain*, 444 U.S. at 246, 100 S.Ct. at 511.

---

**2.** We note that at least one other circuit has given a broader interpretation to *McLain* and held that the requisite connection to interstate commerce may be satisfied if plaintiff can show that any of defendant's activities have a substantial effect on interstate commerce as opposed to requiring that the *challenged* activity itself has some impact on interstate commerce. *See, e.g., Western Waste Service v. Universal Waste Control*, 616 F.2d 1094 (9th Cir.), *cert. denied*, 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980). *See also Stone*, 782 F.2d at 623 (Martin J., concurring) (Judge Martin found that the interstate commerce prerequisite was met in *Stone*, but nevertheless concurred in the affirmance find-

ing that plaintiff had failed to demonstrate a cognizable anti-trust injury. *Id.* at 625).

This expansive reading of *McLain* was clearly rejected by the majority of the *Stone* panel. *See* 784 F.2d at 614, 616. The majority opinion was in accord with the majority of circuits which have considered this issue. *See, e.g., Seglin v. Esau*, 769 F.2d 1274 (7th Cir.1985); *Hayden v. Bracy*, 744 F.2d 1338 (8th Cir.1984); *Furlong v. Long Island College Hospital*, 710 F.2d 922 (2d Cir.1983); *Cordova & Simonpietri Insurance Agency v. Chase Manhattan Bank*, 649 F.2d 36 (1st Cir.1981); *Crane v. Inter-Mountain Health Care, Inc.*, 637 F.2d 715 (10th Cir.1981) (*en banc*).

Therefore, we affirm the grant of summary judgment against plaintiff's claim under the Sherman Act.[3]

## II.

We next consider plaintiff's due process claim brought under 42 U.S.C. § 1983. It is well established that in order to state a claim under § 1983, a plaintiff must show that the alleged violation of federal rights is "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982).

In *Crowder v. Conlan*, 740 F.2d 447 (6th Cir.1984), Dr. Crowder brought a civil rights claim under 42 U.S.C. § 1983 against a private hospital and members of its staff because his surgical privileges had been restricted. Dr. Crowder alleged that the review process which resulted in the restriction of his privileges did not comport with the constitutional requirements of due process. In order to show the requisite state action element of his claim, Dr. Crowder alleged the existence of several factors including: (1) a large percentage of the hospital's revenues were derived from government sources, including Medicare and Medicaid; (2) extensive state regulation of the hospital; (3) the hospital board of trustees included two local government officials; and (4) the hospital facilities were owned by the county and leased back to a private organization. 740 F.2d at 449–50. After carefully considering each of these factors, this court stated:

In sum, we find that the connections between the State and the Jennie Stuart Memorial Hospital are insufficiently linked to the challenged actions of the defendants to warrant a finding of state action in the hospital's decision to restrict Dr. Crowder's staff privileges. Therefore, Dr. Crowder has not stated a claim for relief under 42 U.S.C. § 1983.

740 F.2d at 453 (1984).

■ In the instant case, plaintiff attempts to establish the existence of state action by alleging: (1) Samaritan is licensed and regulated by the state of Michigan, and (2) Samaritan receives funds from Medicare and Medicaid. We find that the alleged connections between Samaritan Health Center and the State of Michigan are even more tenuous than the factors which were found insufficient to establish the state action in *Crowder*. Therefore, we hold that plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983.[4]

## III.

■ Plaintiff also contended that the revocation of his staff privileges at Samaritan violated the Michigan Antitrust Reform Act of 1984. Mich.Comp.Laws Ann. § 445.-701, *et seq.* In part III of the order granting defendants' motion to dismiss, the trial court ruled that plaintiff failed to state a claim under the Michigan antitrust laws.[5] The district court concluded that actions taken pursuant to the peer review process

---

**3.** Because we find *Stone* to be dispositive of the antitrust claims, we do not address plaintiff's argument that the state action exception should not apply since Michigan through judicial decision has concluded that there is no state court review of peer review decisions. *Hoffman v. Garden City Hospital-Osteopathic*, 115 Mich.App. 773, 321 N.W.2d 810 (1982).

**4.** We note that the district court found that plaintiff had abandoned the due process arguments under both federal and state constitutions; however, plaintiff contends that he did not withdraw his due process claims. Moreover, both the parties fully litigated the due process issue on appeal. Because our resolution of this issue is consistent with the outcome below, we need not decide whether the district court properly concluded that plaintiff had abandoned his due process claim. *See Herm v. Stafford*, 663 F.2d 669, 684 (6th Cir.1981).

**5.** The trial judge ruled on the merits of plaintiff's pendent state law antitrust claim even though the federal claims had already been dismissed. We note that it is within the discretion of the trial judge to retain jurisdiction over pendent state law claims even after all the federal claims have been dismissed, so long as all the claims arise from a common nucleus of operative facts. *See Lewis v. Pennington*, 400 F.2d 806, 815–16 (6th Cir.) *cert. denied sub nom., Pennington v. United Mine Workers*, 393 U.S. 983, 89 S.Ct. 450, 21 L.Ed.2d 444 (1968) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1965)). In the instant case, we cannot say that the trial judge abused his discretion in deciding to rule on the state law antitrust claim even though he chose to dismiss the state law tort claim for lack of jurisdiction.

were exempt from scrutiny under the Michigan Antitrust Reform Act.

The Reform Act specifically excludes activities authorized by Michigan statute:

This act [Reform Act] shall not apply to a transaction or conduct specifically authorized under the laws of this state or the United States, or specifically authorized under laws, rules, regulations or order administered, promulgated or issued by a regulatory agency, board, or officer acting under statutory authority of this state or of the United States.

Mich.Comp.Laws Ann. § 445.774(4).

■ Under Michigan law, hospitals are required to maintain a peer review system. *See* Mich.Comp.Laws Ann. § 333.21511 (West Supp.1986). Therefore, since the peer review process is mandated by a Michigan law, the trial judge correctly concluded that the defendants' activities were exempt from challenge under the Michigan antitrust laws. Accordingly, the trial judge's dismissal of plaintiff's state law antitrust claim is affirmed.

### IV.

Having disposed of plaintiff's federal claims, the trial judge chose not to rule on plaintiff's remaining pendent state law claims. As previously noted, this decision is within the discretion of the trial judge and we find that he did not abuse his discretion in the instant case.[6] Therefore, plaintiff's claims involving the hospital bylaws and his claim for intentional interference of advantageous business relations were properly dismissed without prejudice.

AFFIRMED.

---

**6.** *See supra* note 5.