**Vicky SAVAS, M.D., Plaintiff–Appellant,**

v.

**WILLIAM BEAUMONT HOSPITAL, Royal Oak and William O'Neill, M.D., jointly and severally, Defendant–Appellees.**

No. 02–2106.

United States Court of Appeals, Sixth Circuit.

June 9, 2004.

Beth M. Rivers, Pitt, Dowty, McGehee, Mirer & Palmer, Royal Oak, MI, for Plaintiff–Appellant.

Mark T. Nelson, Regan S. Dahle, Butzel Long, Detroit, MI, Gordon J. Walker, Butzel Long, Bloomfield Hills, MI, for Defendants–Appellees.

BEFORE: GILMAN and KRUPANSKY, Circuit Judges; and RUSSELL, District Judge.*

RUSSELL, District Judge.

Plaintiff–Appellant Vicky Savas ("Savas") appeals from the district court's order granting summary judgment in favor of Defendant–Appellees William Beaumont Hospital, Royal Oak, and William O'Neill, M.D. on her claims under Title VII and the Michigan Elliott–Larsen Civil Rights Act for gender discrimination, retaliation, intentional infliction of emotional distress, and tortious interference with business relations. Savas challenges the finding that she was not an "employee" for the purposes of Title VII and the Michigan Elliott–Larsen Civil Rights Act and the dismissal of her claims for tortious interference with business relationship and intentional infliction of emotional distress.

## BACKGROUND

In 1991, the Plaintiff Vicky Savas, who is a medical doctor, became a member of the staff at Defendant William Beaumont Hospital ("Beaumont"). Dr. Savas specializes in interventional cardiology and is board certified in Internal Medicine and Cardiology. Dr. Savas had a private corporation titled Vicky Savas, M.D., P.C., a private office, and staff. However, she performed cardiac catheterizations at Beaumont's catherization laboratories because Beaumont could provide the necessary equipment, facilities, and staff. Beaumont maintains standards for Dr. Savas and all other physicians' treatment of patients and all physicians are subject to extensive peer review.

Dr. Savas had been a staff physician paid by the hospital but her status as a paid staff member ceased in 1992. As of 1996, Dr. Savas was limited to eight procedures per day in the catherization laboratory at Beaumont. Controlling the number of procedures performed by Dr. Savas each day could affect Dr. Savas's income. Dr. Savas also was removed from the on-call list and her contract to read EKGs was cancelled. When Dr. Savas lost her privileges at Beaumont in November 2000, she did not have privileges at any other hospital. After her loss of privileges at Beaumont, she was unable to secure privileges at any other hospital.

## ANALYSIS

A movant is entitled to summary judgment "if the pleadings, depositions, an-

---

* Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Facts are "material" in a summary judgment inquiry only when they could affect the case's outcome under the controlling substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### A. Title VII and Elliott–Larsen Act

The district court applied the "economic realities test" to decide that Dr. Savas was not an employee under either Title VII or the Elliott–Larsen Act. See *Falls v. Sporting News Publ'g Co.,* 834 F.2d 611 (6th Cir.1987); *Kirby v. Robby Len Swimfashions,* 1990 WL 72322 (6th Cir.1990) (unpublished opinion). The district court evaluated

the parties view of their relationship, the hiring and termination methods employed by the alleged employer, whether the alleged employer withholds taxes or pays social security obligations, the extent the worker receives benefits, the opportunities for the workers' advancement, the degree of control by the principal over the worker, the permanency of the relationship, and the respective furnishing of facilities and equipment by either party.

*Kirby,* 1990 WL 72322 at *2. The district court found that Dr. Savas had testified in an unrelated case that she was not an employee of the hospital, and that Beaumont did not withhold taxes or pay her benefits, compensation, or social security obligations. Also, Dr. Savas had to reapply for staff privileges at Beaumont every two years and Dr. Savas collected her own fees for services rendered while using Beaumont's equipment.

After the briefs were filed in this case, another panel of the Sixth Circuit decided that a surgeon whose privileges were partially revoked was not an employee. *Shah v. Deaconess Hosp.,* 355 F.3d 496, 500 (6th Cir.2004). In *Shah,* a surgeon had surgical privileges at a number of hospitals. *Id.* at 497. One of the hospitals revoked part of his privileges when one of his patients died. *Id.* This caused the surgeon to sue for discrimination. *Id.* To determine if the surgeon was an employee under Title VII, entitling him to bring a discrimination claim, the panel examined

the hiring party's right to control the manner and means by which the product is accomplished; the skill required by the hired party; the duration of the relationship between the parties; the hiring party's right to assign additional projects; the hired party's discretion over when and how to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the hiring party's regular business; the hired party's employee benefits; and tax treatment of the hired party's compensation.

*Id.* at 499–500. The panel found that even though the hospital had standards of care, the hospital did not control the manner and means of the surgeon's performance. *Id.* at 500. The hospital did not pay for his services, give him a W–2 form, dictate his hours, hire or pay his assistants, and the surgeon performed forty-five percent of his surgeries at other hospitals. *Id.* The surgeon admitted he was not an employee during his deposition. *Id.*

█ *Shah* is distinguishable from the present case only because the surgeon in *Shah* did not lose all of his privileges and

he had privileges at other hospitals.[1] However, *Shah* is like this case in that neither hospital paid the doctors for their services or hired or paid the doctors' assistants and both hospitals had standards, peer review, and regulations governing the performance of doctors. Also, in *Shah,* like this case, the doctor admitted that he was not an employee of the hospital. The District Court was correct in dismissing the claim under Title VII and the Elliott–Larsen Act.

## B. Tortious Interference with Business Relations

■ Under Michigan law, the courts have declined to review a private hospital's decision to terminate staff privileges. See *Sarin v. Samaritan Health Center,* 176 Mich.App. 790, 440 N.W.2d 80 (Mich.Ct. App.1989); *Veldhuis v. Central Michigan Community Hosp.,* 142 Mich.App. 243, 369 N.W.2d 478 (Mich.Ct.App.1985); *Hoffman v. Garden City Hospital–Osteopathic,* 115 Mich.App. 773, 321 N.W.2d 810 (Mich.Ct. App.1982). Recently, a panel of this circuit dismissed a claim for tortious interference because Michigan law is clear that hospital review boards' decisions to remove staff privileges are not judicially reviewable in cases where a review of the methods and reasons behind the action would have to be considered. *Samuel v. Herrick Memorial Hospital,* 201 F.3d 830, 834–35 (6th Cir.2000). Further, by Michigan statute, a hospital cannot be held liable for peer review actions such as review of staff privileges unless it can be shown that the hospital acted with malice. Mich. Comp. Laws § 331.531. See also *Veldhuis v. Allan,* 164 Mich.App. 131, 416 N.W.2d 347 (Mich.Ct.App.1987). The Michigan statu-

tory immunity does not apply if the reviewing entity communicates or relies upon information with knowledge of its falsity or with reckless disregard of its truth or falsity. *Veldhuis,* 416 N.W.2d at 349–50. The district court found that a conclusory allegation of malice in the complaint was insufficient. Merely alleging something in the complaint is not enough to create a jury issue in the face of a motion for summary judgment. The district court was therefore correct in dismissing the claim for tortious interference with business relations.

## C. Intentional Infliction of Emotional Distress

■ The district court also concluded that Dr. Savas had failed to raise a genuine issue of material fact in support of her claim for the intentional infliction of emotional distress. Intentional infliction of emotional distress is proved by the following four elements: 1) extreme and outrageous conduct; 2) intent or recklessness; 3) causation; and 4) severe emotional distress. *Roberts v. Auto–Owners Ins. Co.,* 422 Mich. 594, 374 N.W.2d 905, 908 (Mich. 1985). To be extreme or outrageous, the conduct must be so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Id.* at 908–09. The district court found that Dr. Savas failed to allege what conduct constituted extreme and outrageous conduct. Clearly, Dr. Savas did not present more than a "mere scintilla of evidence" that a jury could use to find in her favor.

---

1. *Shah* found that the hospital did not dictate the surgeon's hours. *Id.* In contrast, in this case, the doctor could use the hospital only at certain times. However, it seems unrealistic to believe that the surgeon in *Shah* had com-

plete control over when he could use the hospital's facilities and did not depend on some type of scheduling mechanism like Dr. Savas did.

## CONCLUSION

The district court properly concluded that Plaintiff was not an employee and also properly dismissed Plaintiff's state law claims. Therefore, the district court's decision is **AFFIRMED**.