Vickey SAVAS, M.D., Plaintiff,

v.

**WILLIAM BEAUMONT HOSPITAL,**
Royal Oak, et al., Defendants.

**Case No. 01–72389.**

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 13, 2002.

Geoffrey N. Fieger, Paul W. Broschay, Feiger, Feiger, Southfield, MI, for Plaintiff.

Mark T. Nelson, Regan S. Dahle, Butzel Long, Detroit, MI, Gordon J. Walker, Butzel Long, Bloomfield Hills, MI, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

EDMUNDS, District Judge.

For the reasons set forth below, Defendants' renewed motion for summary judgment is GRANTED and Plaintiff's complaint is DISMISSED.

## I. Facts

On November 7, 2001, this Court denied Defendants' motion for summary judgment, without prejudice, and allowed the parties an opportunity to conduct discovery on the sole issue of whether Plaintiff was an employee of Beaumont. The parties have completed discovery on this issue, and Defendants have filed a renewed motion for summary judgment.

Plaintiff Dr. Vicky Savas, M.D. is a licensed Cardiologist in the State of Michigan who, from 1991 to 2000, held staff privileges at Defendant William Beaumont Hospital ("Beaumont"). *See* Complaint ¶ 10. Between 1991 and 2000, Beaumont granted Plaintiff an appointment to the medical staff and clinical privileges on five separate occasions. At Beaumont, as at other hospitals, physicians who seek to render patient care must receive both an appointment to the Medical Staff and a grant of clinical privileges. *See* Defendant's Exhibit 2. Plaintiff saw and treated patients in the manner she elected within her authority as a licensed physician; Beaumont did not direct the manner in which Plaintiff rendered medical care.

Plaintiff's clinical privileges were suspended on or about November 2000. Defendant claims this decision was made after an extensive investigation and review of facts and after a thorough peer review. Plaintiff's complaint brings claims of sexual harassment, gender discrimination and retaliation against Beaumont under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Elliott–Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* ("Elliott–Larsen"). Plaintiff has also asserted tort claims against Beaumont and Dr. William O'Neill, M.D. ("Dr. O'Neill") of tortious interference with an advantageous business relationship and intentional infliction of emotional distress.[1]

Defendant brings this motion for summary judgment on several grounds. First, Defendant argues that Plaintiff's claims under Title VII and Elliott Larsen fail

1. Dr. William O'Neill, M.D. is the Chief of  Cardiology at Beaumont.

because Plaintiff was not an "employee" of Beaumont, an essential prerequisite to any action under either statute. In support of this argument, Defendants point to two occasions in unrelated lawsuits where Plaintiff has admitted under oath the she was not an "employee" of the Hospital. Defendants further aver that, at the time of the conduct that gave rise to the present suit, Plaintiff was the sole officer and director of a medical practice known as, Vicky Savas, M.D., P.C. *See* Deposition of Vicky Savas at 5–6 attached as Defendant's Exhibit 1.

Plaintiff formed her medical practice in 1991, and had staff privileges at Beaumont from 1991 until November 2000. *See id.* Plaintiff has testified that her Professional Corporation has six employees. *See id.* at 14. Plaintiff has admitted that all of her revenue is derived directly from her patients and/or her patients' health care insurance; none of her revenue is from Beaumont. *See id.* at 26–31. Plaintiff has not received a payroll check, W–2 or 1099 from Beaumont for nearly six years. *See id.* at 33. Plaintiff has also admitted that Beaumont does not pay her social security taxes, unemployment taxes or income taxes. *See id.* at 36. Plaintiff testified that her payroll checks come from Vicky Savas, M.D., P.C. *See id.* at 12.

Similarly, Plaintiff testified that Beaumont did not provide her with any dental, optical or health insurance benefits. *See id.* at 33. Plaintiff testified that Beaumont did not pay her licensing fees, professional dues or insurance premiums; but rather such expenses were paid by either Plaintiff personally, or by her Professional Corporation. *See id.* at 36. In addition, Plaintiff admitted that Beaumont neither billed, nor collected money from patients for the professional services rendered by her. *See id.* at 13.

Next, Defendants argue that Plaintiff's tort claims must also be dismissed under a long standing legal principle that there can be no judicial review of tort claims arising out of a private hospital's decision to terminate medical staff privileges. Additionally, Defendant's argue that Plaintiff's compliant should be dismissed, because Plaintiff released Beaumont and Dr. O'Neill from all liability arising from the application process, professional review actions and corrective actions. Finally, Defendant argues that Plaintiff's complaint must be dismissed in light of the Michigan statute providing immunity to Defendants for peer review actions.

## II. Analysis

### A. Standard for Motion for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S.

574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505.

The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S.Ct. 2505. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

## B. Title VII and Elliott Larsen Claims

■ A prerequisite to maintaining an action under either Title VII or Elliott Larsen is that a plaintiff be an "employee" of the defendant. *See Kirby v. Robby Len Swimfashions,* 904 F.2d 36, 1990 WL 72322 (6th Cir.1990); *Falls v. The Sporting News Publishing Co.,* 834 F.2d 611, 613 (6th Cir.1987). In cases where the dispute centers on determining whether a plaintiff is either an employee or an independent contractor, the Court must apply the "economic realities test." *Falls* at 614. Under the test, the court will "examine the economic realities underlying the relationship between the individual and the so called principal . . ." *Kirby* at 36:

> . . . [u]nder the economic realities test, courts consider several factors, such as the parties view of their relationship, the hiring and termination methods employed by the alleged employer, whether the alleged employer withholds taxes or pays social security obligations, the extent the worker receives benefits, the opportunities for the workers' advancement, the degree of control by the principal over the worker, the permanency of the relationship, and

the respective furnishing of facilities and equipment by either party. *Id.*

Whether an individual is an employee or an independent contractor is a question of law. *See Armbruster v. Quinn,* 711 F.2d 1332, 1339 (6th Cir.1983).

■ First, Defendants directs the Court to two occasions in unrelated litigation in which Plaintiff has admitted that she is not an employee of Beaumont. First, in 1996, Plaintiff provided the following answer to a request to admission in a medical malpractice case:

> 13. Please admit that Dr. Savas was an employee of Beaumont Hospital on 10–15–96. [subparts omitted].
>
> *Answer:* Deny. Further answering, I was on the Medical Staff of the Hospital.

Defendant's Exhibit 4 (attached to Defendant's initial motion for summary judgment).

Furthermore, Plaintiff similarly testified at her deposition in the same case:

> Q: What was your relationship with Beaumont Hospital in September and October of 1996.
>
> A: I was an interventional cardiologist on staff there.
>
> Q: Were you an employee of the hospital?
>
> A: . . . No.
>
> Q: Had you been an employee of the Hospital?
>
> A: Yes.
>
> Q: When did you stop being an employee of the Hospital?
>
> A: I believe it was in 1992.

Defendant's Exhibit 5 (initial motion).

Defendants claim that the above testimony illustrates two points. First, Plaintiff recognized the difference between being an employee of Beaumont as opposed to being a staff physician with privileges. Second, Plaintiff knew that as of 1992 she

was no longer an employee of Beaumont. The above testimony alone is a sufficient basis for this Court to hold that Plaintiff was not an employee of Beaumont for purposes of Title VII. However, the terms and conditions of Plaintiff's staff privileges with Beaumont further support a finding that Plaintiff was not an employee of Beaumont.

The additional discovery undertaken by the parties supports the conclusion that Plaintiff was not an employee of Beaumont. Beaumont did not withhold taxes from Plaintiff, did not pay her social security obligations nor did it pay her any benefits or compensation. Furthermore, Plaintiff and Beaumont did not have a permanent relationship. In fact, Plaintiff had to reapply for staff privileges at Beaumont every two years. *See* Defendant's Exhibits 6 & 7.

Several cases from other circuits consistently hold that a physician with staff privileges is not an "employee" and, thus, cannot maintain an action under Title VII. Courts have used a variety of factors in making this decision. *See Diggs v. Harris,* 847 F.2d 270 (5th Cir.1988)(privileges at the hospital were not necessary to the physician's practice, the hospital and the physician intended that the physician be an independent contractor); *Alexander v. Rush North Shore Medical Center,* 101 F.3d 487 (7th Cir.1996)(the hospital did not direct the manner in which the physician rendered medical care, was not responsible for billing the physician's patients, did not provide paid vacation to the physician, did not provide a private office for the physician at the hospital); *Cilecek v. Inova Health System Services,* 115 F.3d 256 (4th Cir.1997)(the hospital did not pay the physician for her services, did not control the hours that the physician worked).

All of the above quoted factors are present in the case before the Court. When Plaintiff treats a patient at Beaumont, Beaumont only collects fees for the use of Beaumont's facilities (i.e., the operating room, the cath lab, etc.) and the services provided by its employees (nurses, technicians, etc.); Beaumont collects no fee for the professional services provided by Plaintiff. If a patient remains at Beaumont after being treated by Plaintiff, and Beaumont employees subsequently treat the patient, then Beaumont will collect a fee for the services of those employees. Beaumont does not collect fees for the professional physician service component of work conducted by Plaintiff; Plaintiff performs those services, and collects fees for those services from the patient or their insurer.

Plaintiff attempts to distinguish the above cases by arguing that Dr. Savas' relationship with Beaumont is different from most physicians' relationship with their hospitals. First, Plaintiff argues that, as an interventional cardiologist, Plaintiff is entirely dependent on Beaumont's equipment, facilities and staff. Plaintiff's practice consists of treating patients with cardiac vessel diseases by inserting catheters into the arteries of the heart to clear blockages or implanting stents to maintain blood flow to the heart. Beaumont offered these resources to Dr. Savas in return for her complying with rules dictated by the hospital. Thus, Plaintiff principally claims that she was an employee of Beaumont because Beaumont "controlled" her ability to practice medicine through restricting her access to the catheterization laboratory and by limiting her ability to secure new patients by removing her from the chest pain rotation in the hospital's emergency room.

The facts in the present case undermine Plaintiff's argument. Plaintiff has contended that Beaumont adversely affected her income in March 1996 when it limited her to eight (8) patients a day in the cath

lab. *See* Defendant's Exhibit 4. In actuality, Beaumont continued to make it facilities open to Plaintiff and Plaintiff continued to service more than eight patients a day. *See* Chart of Number of Procedures Performed by Plaintiff from January 1996 to November 2000 attached as Defendant's Exhibit 5. This chart also indicates that on several days, Plaintiff performed less than eight procedures a day, which further undermines Plaintiff's argument that Beaumont restricted Plaintiff's ability to practice medicine by capping her access to the hospital's cath lab to a certain number of procedures; Plaintiff cannot claim that the eight patient "cap" restricted her ability to practice if, on several days, Plaintiff did not even attempt to complete eight procedures.

Plaintiff also argues that Beaumont restricted her ability to practice medicine by not placing her on the hospital's on-call list.[2] The Court does not accept this argument either; it is counterintuitive to conclude that Beaumont *becomes* Plaintiff's employer by *not* retaining her to be on-call. If anything, the fact that Beaumont failed to retain Plaintiff on its on-call list is further indication that Plaintiff was *not* an employee of the hospital.

Furthermore, *Cilecek, supra* did not accept the types of arguments advanced by Plaintiff:

> Similarly, that Cilecek used instruments of the hospital emergency room that were supplied by the hospital is also inherent in the provision of emergency medical services and likewise is not a reliable indicator of employee status. Whether a doctor specializing in emergency medicine is an employee os the hospital or simply has privileges at the hospital, he must, in almost every case, use emergency room facilities provided by the hospital in order to render services.

> *Id.* at 262.

*Cilecek* was also not persuaded by the plaintiff's argument that, since he had to abide by hospital rules and regulations for the treatment of patients, he was an employee of the hospital:

> All of these regulations, however, relate to the professional standard for providing health care to patients for which both Emergency Physicians and the Inova hospitals had professional responsibility to their patients. While Cilecek certainly retained a professional independence in performing professional services, he also shared a professional responsibility to cooperate with the hospitals to maintain standards of patient care, to keep appropriate records, and to follow established procedures.

> *Id.* at 262.

Plaintiff also relies on *Ross v. William Beaumont Hospital,* 678 F.Supp. 655 (E.D.Mich.1988) to support her position. In *Ross,* a surgeon filed a sex discrimination suit against Beaumont claiming she was denied privileges because she was a woman. In deciding whether the defendant was entitled to judgment in its favor, Judge Julian Abele Cook initially considered whether Title VII applied to the plaintiff—a physician with staff privileges with the defendant. Ultimately, the court rejected the defendant's argument that the plaintiff was an independent contractor and had no standing to sue under Title VII. The *Ross* Court found that the "doctor based her whole livelihood at Beaumont, including serving as chairperson of some of Beaumont's committees, underwent extensive progressive discipline, including probation and leaves of absence."

---

**2.** Dr. Cindy Grines testified that Plaintiff was taken off the on-call list in 1994. *See* Plaintiff's Exhibit C, pp. 34–36.

*Ross* explained its finding by citing *Armbruster v. Quinn*, 711 F.2d 1332, 1339 (6th Cir.1983), and held:

> Rather, one must examine the economic realities underlying the relationship between the individual and the so-called principle in an effort to determine whether that individual is likely to be susceptible to the discriminatory practices which the act was designed to eliminate.

Under this so called "economic realities" test, *Armbruster* concluded that a court has an obligation to look beyond the title of a claimant's position to determine the applicability, if any, of Title VII. It suggested that a court should consider a number of factors in making such a decision, including the hiring and termination process, history of the positions, evidence of company payments and benefits, advancement opportunities, etc. This Court believes that issues which address an employee's ability to obtain comparable employment and nature of the disciplinary mechanism are additional factors which should be explored in an attempt to resolve this issue.

Ross clearly satisfies Title VII under this standard. She based her whole livelihood at Beaumont, including service as chairperson of some of Beaumont's committees, underwent extensive progressive discipline, including probation and leaves of absence, The strictures of Title VII clearly apply to Defendant. *Ross* at 675.

Defendant argues that *Ross* is flawed in its reasoning, and does not address the numerous factors that other circuit courts of appeals have considered dispositive. The Court in *Ross* likened the plaintiff's case to that of a resident employed by a hospital applying for staff privileges at the hospital at the end of his or her residency. To that end, the *Ross* Court considered *Amro v. St. Luke's Hospital of Bethlehem, Pa.*, 39 F.E.P. 1574 (E.D.Pa.1986) which held that, similar to providing an associate the opportunity to become a partner at a law firm, the opportunity to secure staff privileges at a hospital at which a resident is employed is a benefit of the resident's employment with that hospital. Importantly, the *Amro* court specifically distinguished the relationship of a resident to a hospital at which he is employed, from the relationship of a physician at a hospital with staff privileges; the court found that while the former is an employee, the latter is an independent contractor.

The several circuit courts of appeals cited above held that the factors underlying the conclusion in *Ross* do not justify the conclusion that a physician with privileges is an employee for purposes of Title VII.[3] For instance, in *Bender v. Suburban Hospital*, 998 F.Supp. 631 (D.Md.1998), *Cilecek, supra, Alexander, supra,* and *Diggs, supra,* the courts held that the key inquiry is whether the defendant restricted the plaintiff from securing privileges at other hospitals, not whether the plaintiff simply chose to hold privileges at only one hospital. The Court agrees with this position; a physician should not be able to convert him or herself from an independent contractor to an employee simply by choosing to hold privileges at only one institution.

Similarly, the courts in *Cilecek, Bender, Alexander,* and *Diggs* all found that performing some administrative functions, like serving on committees, did not render a plaintiff an "employee": "[O]bligations to

---

**3.** The factors considered in *Ross* are: the physician's entire livelihood comes from a single hospital, service as a chairperson on some of the hospital's committees, and the application of progressive discipline (including probation and leaves of absence) by the hospital against the physician.

participate in non-treatment related administrative activities do not transform doctors merely with privileges into independent contractors or employees." *Bender* at 636.

*Ross* has never been cited as an authority for the proposition at issue, and every circuit to consider this issue has used a higher test to determine "employee" status for physicians with privileges at hospitals. Thus, the Court adopts the majority position, and GRANTS Defendant's motion for summary judgment on Plaintiff's Title VII and Elliott–Larsen claims since Plaintiff was not an "employee" of Beaumont.

## C. State Law Claims

Plaintiff's complaint also asserts two state law claims: Count V—Tortious Interference with a Contract or Advantageous Business Relationship and Count IV—Intentional Infliction of Emotional Distress. These counts cannot be maintained under Michigan law, and are also dismissed.

■ Michigan law states that there can be no judicial review in the form of a tort claim of a private hospital's decision to terminate medical staff privileges, even to ensure that it was not arbitrary, capricious or unreasonable. *See Hoffman v. Garden City Hospital—Osteopathic,* 115 Mich.App. 773, 321 N.W.2d 810 (1982); *Sarin v. Samaritan Health Center,* 176 Mich.App. 790, 440 N.W.2d 80 (1989); *Veldhuis v. Central Michigan Community Hospital,* 142 Mich.App. 243, 369 N.W.2d 478 (1985). This doctrine was recently examined and upheld by the Sixth Circuit in *Samuel v. Herrick Memorial Hospital, et al.,* 201 F.3d 830 (6th Cir.2000)

■ Plaintiff cannot avoid the rule of judicial nonreviewability by characterizing her claims as "tortious interference" or "intentional infliction of emotional distress." This would "necessarily involve a review of the decision to terminate and the methods behind that decision, thus making a mockery of the rule that prohibits judicial review of such decisions by private hospitals." *Sarin* at 83.

■ Even if the Court were convinced that Plaintiff were able to overcome the limit on judicial review, Plaintiff's intentional infliction of emotion distress claim must be dismissed standing alone. In order to establish that claim, Plaintiff must plead and prove: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *See Roberts v. Auto–Owners Insurance Co.,* 422 Mich. 594, 602, 374 N.W.2d 905 (1985). Liability for such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society. *Id.* Additionally, Plaintiff must plead and prove that her emotional distress has manifested itself in a definite and objective physical injury. *See Meyerhoff v. Turner Construction Co.,* 202 Mich.App. 499, 506–507, 509 N.W.2d 847 (1993).

Plaintiff has failed to allege facts that would constitute the extreme and outrageous conduct needed to support a claim for intentional infliction of emotional distress. Plaintiff's complaint does not even specify what conduct forms the basis for the claim. Thus, Plaintiff's claim for intentional infliction of emotional distress is dismissed on these grounds as well.

## D. MCLA § 331.531

The medical staffing actions of Michigan hospitals are granted immunity from liability under Michigan law. MCLA § 331.531 defines a hospital and such participants as "review entities" for the purposes of reviewing the care provided within a health care institution, and provides immunity for

their peer review actions. The statute provides, in relevant part:

(1) A person, organization, or entity may provide to a review entity Information or data relating to the physical or psychological condition of a person, the necessity, appropriateness, or quality of health care rendered to a person, or the qualifications, competence, or performance of a health care provider …

(3) A person, organization, or entity is not civilly or criminally liable:

(a) For providing information or data pursuant to subsection (1).

(b) For an act or communication within its scope as a review entity.

(c) For releasing or publishing a record of the proceedings, or the reports, findings, or conclusions of a review entity, subject to sections 2 and 3.

(4) The immunity from liability provided under subsection (3) does not apply to a person, organization, or entity that acts with malice.

The leading case on this issue is *Veldhuis v. Allan*, 164 Mich.App. 131, 416 N.W.2d 347 (1987), which involved a termination of medical staff privileges where the plaintiff sued that physician members of the Medical Executive Department and the Fair Hearing Committees and the Chairman of the Department who had requested the revocation of staff privileges and had also testified at the hearing. *Veldhuis* held that the definition of "malice" that would be used to interpret the statute was one of "actual malice", and that a plaintiff must not show ill will or spite to be able to maintain a lawsuit, but rather "knowledge of falsity or reckless regard if the truth or falsity of the information or data presented." *Id.* at 137, 416 N.W.2d 347. The court found that plaintiff produced "no evidentiary support for his allegations of malice" and upheld the dismissal of the suit. *Id.*

 Similarly, in this matter, Plaintiff's complaint does not contain an allegation that Defendants published anything with knowledge of falsity or reckless disregard of the truth. "Mere conclusions" of malice in a complaint are not sufficient to maintain an action. *Regualos v. Community Hospital*, 140 Mich.App. 455, 364 N.W.2d 723 (1985). Therefore, Plaintiff's tort claims are dismissed on these grounds as well.

### III. Conclusion

For the reasons stated above, the Court GRANTS Defendants' renewed motion for summary judgment.