*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JORAM MOGAKA, M.D.,

UNPUBLISHED
September 29, 2022

Plaintiff-Appellant,

v

No. 358862
Oakland Circuit Court
LC No. 2020-181551-CD

WILLIAM BEAUMONT HOSPITAL,

Defendant-Appellee.

Before: GLEICHER, C.J., and MARKEY and PATEL, JJ.

PER CURIAM.

In this appeal involving claims under Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.*, and the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*, plaintiff, Joram Mogaka, M.D., appeals by right the circuit court's order granting summary disposition in favor of defendant, William Beaumont Hospital. We affirm.

## I. BACKGROUND

Plaintiff is a Kenyan-born American citizen who completed medical school in Kenya. In 1999, plaintiff sought further medical training and came to Michigan where he completed his residency at Wayne State University. In 2005, plaintiff started his own private medical practice, Mogaka, M.D., P.C., of which he is an employee. Since then, plaintiff has had privileges at various area hospitals, including defendant, at multiple long-term, acute-care centers, and at several nursing homes. The privileges at issue in this case regard plaintiff's inclusion on defendant's emergency room (ER) call list.

In 2013 or 2014, defendant's Department Chief of Internal Medicine, Dr. Robert Marchese, allegedly began harassing plaintiff on the basis of purported complaints that Dr. Marchese had received from defendant's nursing staff that plaintiff was unreachable through plaintiff's long-range paging system. Plaintiff was on the ER call list at the time. The issue concerning plaintiff's reachability was not resolved, so in May 2015, Dr. Marchese removed plaintiff from the ER call list. Plaintiff viewed this decision as suspicious because (1) Dr. Marchese never showed plaintiff the nurses' complaints or produced evidence of the complaints; (2) to plaintiff's knowledge, Dr. Marchese had never removed any doctors from the ER call list except for plaintiff and another

African-American doctor; and, (3) Dr. Marchese assigned the fewest ER call shifts each month to African-American doctors. Plaintiff believed that Dr. Marchese was racist in light of plaintiff's removal from the ER call list and Dr. Marchese's demeanor when interacting with plaintiff.[1]

Sometime in 2016, plaintiff met with defendant's president, Richard Swaine, and then-Chief Medical Officer (CMO), Dr. Donna Hoban, and plaintiff reported his allegations of discriminatory treatment. President Swaine and Dr. Hoban supposedly promised to have plaintiff's ER privileges reinstated, but plaintiff's privileges were not renewed despite plaintiff's follow-up efforts.

In January 2018, Dr. Nicholas Gilpin became defendant's new CMO. Plaintiff asked Dr. Gilpin if he could be returned to the ER call list. Dr. Gilpin responded that he would talk to Dr. Marchese. Eventually, after an acrimonious meeting in which Dr. Gilpin sought to curtail plaintiff's privileges by only offering plaintiff a one-year renewal of privileges as a trial period, plaintiff's privileges were reinstated for the customary two-year period.

Given these events, plaintiff filed a five-count complaint against defendant on June 4, 2020, alleging race discrimination in violation of the ELCRA and Title VII (Count I), national origin discrimination in violation of the ELCRA and Title VII (Count II), hostile work environment in violation of the ELCRA (Count III), retaliation in violation of Title VII (Count IV), and negligent infliction of emotion distress (NIED) (Count V).

Defendant eventually moved for summary disposition under MCR 2.116(C)(10). Defendant argued, in part, that plaintiff's Title VII claims should be dismissed for failure to exhaust administrative remedies, that plaintiff's ELCRA claims were barred because they were filed outside the limitations period (except for occurrences after June 4, 2017), that the remaining non-time-barred ELCRA claims failed because plaintiff was a nonemployee and defendant did not control plaintiff's employment with Mogaka, M.D., P.C., and that plaintiff had failed to establish a claim for NIED. Plaintiff countered that the summary disposition motion should be denied. With respect to his Title VII claims, plaintiff posited that Michigan law does not require exhaustion of administrative remedies. Regarding his ELCRA claims, plaintiff argued that those claims

---

[1] Dr. Marchese averred in his affidavit that he removed plaintiff from the ER call list because of his failure to remedy numerous complaints, including untimely rounding leading to failure to timely discharge patients, failure to follow admission protocol, delinquent notetaking due to "cut and pastes," and failure to respond to pager and telephone messages. Dr. Marchese indicated that he received a greater number of internal complaints about plaintiff than any other internal medicine physician.

were continuing and timely and that plaintiff was defendant's employee or that his employment was otherwise controlled by defendant. With respect to both his Title VII and ELCRA claims, plaintiff asserted that he had established a prima facie case of race and national origin discrimination, hostile work environment, and retaliation. Finally, plaintiff argued that he had set forth a viable claim for NIED because defendant had breached its duty to manage its employees in a fair and equitable manner.

At the motion hearing, the circuit court ruled on the record in favor of defendant. The circuit court first concluded that plaintiff "didn't exhaust his administrative remedies" with regard to his Title VII claims. The court next ruled that plaintiff's ELCRA claims fell outside the three-year period of limitations. The court also noted that plaintiff was not defendant's employee and that defendant did not control plaintiff's employment, meaning that there could be no liability under the ELCRA. Finally, with respect to plaintiff's NIED claim, the circuit court found that the claim was "definitely not indicated in this matter" because a third person was not injured. The court entered an order granting summary disposition under MCR 2.116(C)(10) for the reasons stated on the record.

## II. TITLE VII CLAIMS

On appeal, plaintiff argues that under Michigan law he was not required to exhaust administrative remedies with respect to his Title VII claims. As indicated, the circuit court found that plaintiff failed to exhaust his administrative remedies with respect to his Title VII claims, granting summary disposition as to those claims under MCR 2.116(C)(10). When, however, a plaintiff has failed to exhaust his or her administrative remedies, summary disposition is appropriate under MCR 2.116(C)(4) for lack of subject-matter jurisdiction. *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 50; 620 NW2d 546 (2000). But "[a]n order granting summary disposition under the wrong court rule may be reviewed under the correct rule." *Wickings v Arctic Enterprises, Inc*, 244 Mich App 125, 147; 624 NW2d 197 (2000) (quotation marks and citation omitted). Accordingly, we will consider plaintiff's argument under MCR 2.116(C)(4).

We review de novo a circuit court's decision on a motion for summary disposition. *Summer v Southfield Bd of Ed*, 310 Mich App 660, 667; 874 NW2d 150 (2015). Summary disposition under MCR 2.116(C)(4) is proper when a "court lacks jurisdiction of the subject matter." "A motion under Subrule (C)(4) may be supported or opposed by affidavits, depositions, admissions, or other documentary evidence[,]" which, if submitted, the circuit court must consider in deciding the motion. *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 714; 909 NW2d 890 (2017). For jurisdictional questions under MCR 2.116(C)(4), we must determine whether the documentary evidence and pleadings demonstrate a lack of subject-matter jurisdiction. *Summer*, 310 Mich App at 668.

When a plaintiff pursues a federal discrimination claim in state court, Michigan courts have recognized that such Title VII claimants are required to exhaust administrative remedies with the Equal Employment Opportunity Commission (EEOC) before pursuing judicial relief. See *Stevens v McLouth Steel Prods Corp*, 433 Mich 365, 375 n 5; 446 NW2d 95 (1989); *Rembert v Ryan's Family Steak Houses, Inc*, 235 Mich App 118, 158; 596 NW2d 208 (1999). In *Shannon v Ford Motor Co*, 72 F3d 678, 684 (CA 8, 1996), the federal court explained:

Ms. Shannon did not exhaust her Title VII failure-to-promote claim. In general, exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts. To exhaust her remedies, a Title VII plaintiff must timely file her charges with the EEOC and receive, from the EEOC, a "right to sue" letter. The proper exhaustion of administrative remedies gives the plaintiff a green light to bring her employment-discrimination claim, along with allegations that are like or reasonably related to that claim, in federal court. [Quotation marks, citations, and brackets omitted.]

In this case, there is no dispute that plaintiff did not pursue an administrative remedy for his Title VII claims. In fact, plaintiff testified that he considered exhausting his administrative remedies, but he decided not to do so. Instead, plaintiff simply filed his complaint in circuit court. On appeal, plaintiff argues that the circuit court erred by dismissing his Title VII claims on the basis of unpersuasive federal authority. While we have cited one federal case, we have also cited clear Michigan precedent that rejects plaintiff's position. In support of his argument, plaintiff cites *Nummer v Mich Dep't of Treasury*, 448 Mich 534; 533 NW2d 250 (1995), but our Supreme Court in *Nummer* did not address a Title VII or any other type of federal claim, and it stated:

Moreover, fact-specific holdings in federal decisions . . . are inapposite because the federal system requires exhaustion of administrative remedies before review in the courts. Where exhaustion is required, granting preclusive effect to an agency decision would undermine the role of the courts in the enforcement of laws prohibiting discriminatory treatment. Michigan law, on the other hand, clearly does not require exhaustion of administrative remedies before filing in circuit court. [*Id.* at 547-548 (citation omitted).]

Accordingly, plaintiff's argument fails.

Plaintiff also cites the language in MCL 37.2801(1), which provides that "[a] person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both." The "act" is the ELCRA; therefore, MCL 37.2801(1) in no form or manner supports an argument that plaintiff did not have to exhaust his administrative remedies for purposes of his federal Title VII claims. Consequently, we conclude that plaintiff's failure to exhaust his administrative remedies deprived the circuit court of subject-matter jurisdiction over his Title VII claims for race and national origin discrimination and retaliation. Thus, summary disposition in favor of defendant as to the Title VII claims was proper, albeit, under MCR 2.116(C)(4).[2]

## III. ELCRA CLAIMS

Plaintiff contends that the circuit court erred by finding as a matter of law that plaintiff was not defendant's employee and that defendant otherwise lacked sufficient control over plaintiff as

---

[2] Our conclusion is dispositive with respect to these claims; therefore, we do not consider plaintiff's other arguments related to his Title VII claims.

to impose liability under the ELCRA. According to plaintiff, the circuit court failed to consider evidence that created a genuine issue of fact regarding whether defendant affected or controlled a condition of his employment—mainly, that Dr. Marchese exercised absolute discretion over the selection of physicians to place on the ER call list.

MCL 37.2202 prohibits an "employer" from engaging in discriminatory acts. An "employer" is defined as "a person who has 1 or more employees, and includes an agent of that person," MCL 37.2201(a). Contrary to plaintiff's bald assertion on appeal, plaintiff is not defendant's employee. In fact, plaintiff unequivocally testified at his deposition that defendant was not his employer, that Mogaka, M.D., P.C., employed him and paid his wages, and that he did not receive any income from defendant. Given these undisputed facts, the circuit court did not err by finding that plaintiff was not defendant's employee.

As both parties recognize, however, the availability of relief under the ELCRA is not limited to employees. In *McClements v Ford Motor Co*, 473 Mich 373, 386-387; 702 NW2d 166 (2005), corrected on other grounds by 474 Mich 1201 (2005), the Michigan Supreme Court observed:

> As plaintiff recognizes, the language of the statute does not otherwise narrow the scope of who may be considered an employer. Thus, MCL 37.2202 forbids any employer from engaging in acts of discrimination that are prohibited by the CRA. MCL 37.2202 does not state that an employer is only forbidden from engaging in such acts against its own employees. Indeed, the CRA appears to clearly envision claims by nonemployees for the failure or refusal to hire or recruit, MCL 37.2202(1)(a); the improper classification of applicants by a status prohibited under the CRA, MCL 37.2202(1)(b); and the discrimination against former employees by operation of a benefit plan or system, MCL 37.2202(1)(c). Accordingly, to limit the availability of relief under the CRA to those suits brought by an employee against his or her employer is not consistent with the statute.

> However, the language of the statute is also clear in requiring some form of nexus or connection between the employer and the status of the nonemployee. MCL 37.2202 forbids an employer from using a classification protected by the CRA: to discriminate against an individual with respect to a term, condition, or privilege of employment, MCL 37.2202(1)(a); to deprive the applicant of an employment opportunity, MCL 37.2202(1)(b); or to discriminate against a person with respect to a term, condition, or privilege of employment, MCL 37.2202(1)(c). In other words, an employer is liable under the CRA when it utilizes a prohibited characteristic in order to adversely affect or control an individual's employment or potential employment. Thus, the key to liability under the CRA is not simply the status of an individual as an "employee"; rather, liability is contingent upon the employer's affecting or controlling that individual's work status. Accordingly, an employer can be held liable under the CRA for discriminatory acts against a nonemployee if the nonemployee can demonstrate that the employer affected or controlled a term, condition, or privilege of the nonemployee's employment. [Quotation marks and ellipses omitted.]

Here, it follows that the only way that plaintiff would be permitted to proceed on his ELCRA claims against defendant is if defendant affected or controlled a term, condition, or privilege of plaintiff's employment.

As indicated, plaintiff asserts that a question of fact exists concerning whether defendant controlled his employment because the ER call-list-application process was a sham, i.e., Dr. Marchese selected physicians for call before applications were completed, and Dr. Marchese had absolute discretion over the call list. We fail to see how either the application process or Dr. Marchese's control over the call list are relevant to whether defendant affected or controlled a term, condition, or privilege of plaintiff's employment with Mogaka, M.D., P.C. That defendant dictated whether plaintiff could be on the ER call list was not, without additional evidence, the equivalent to affecting or controlling a term, condition, or privilege of plaintiff's employment with his employer. Indeed, plaintiff cites no evidence in the record that his employment was adversely affected because of a term, condition, or privilege of employment that defendant controlled.[3]

Instead, as the circuit court recognized, plaintiff controlled his own terms of employment within his private practice. He chose which hospitals and centers he applied to for privileges; he controlled where he admitted patients among the hospitals with which he was affiliated, and he controlled the type of paging system he used. Further, plaintiff's employment remained the same when comparing the time that he was off the call list and the period after defendant had

---

[3] Of note, both parties discuss *Savas, MD v William Beaumont Hosp*, 216 F Supp 2d 660, 664-668 (2002), aff'd 102 F Appx 447 (CA 6, 2004), in which the federal district court held that a physician with privileges at a hospital, and who had derived no income from the hospital, was not the hospital's employee for purposes of Title VII and the ELCRA. Plaintiff argues that the present case is distinguishable from *Savas* because of the application process and Dr. Marchese's absolute discretion in placing doctors on the ER call list. But these are not meaningful distinctions because neither the application process nor Dr. Marchese's discretion affected plaintiff's employment with Mogaka, M.D., P.C. We further note that the federal court in *Savas* observed that "[a] prerequisite to maintaining an action under either Title VII or Elliott Larsen is that a plaintiff be an 'employee' of the defendant." *Id.* at 664. This proposition is inconsistent with Michigan law. See *McClements*, 473 Mich at 386-387.

-6-

reinstated plaintiff's privileges. Accordingly, we conclude as a matter of law that defendant did not control or affect a term, condition, or privilege of plaintiff's employment. In sum, the trial court did not err in summarily dismissing plaintiff's ELCRA claims.[4]

We affirm. Having fully prevailed on appeal, defendant may tax costs under MCR 7.219.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Sima G. Patel

---

[4] In his principal brief on appeal, plaintiff does not challenge the circuit court's ruling rejecting his NIED claim. Having failed to dispute the circuit court's rulings with respect to this claim, we need not consider granting relief. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Regardless, the NIED claim is clearly not applicable to the facts in this case given that "Michigan recognizes the tort of negligent infliction of emotional distress only when a plaintiff witnesses negligent injury to a third party and suffers mental disturbance as a result." *Teadt v Lutheran Church Missouri Synod*, 237 Mich App 567, 581; 603 NW2d 816 (1999), citing *Duran v Detroit News, Inc*, 200 Mich App 622, 629; 504 NW2d 715 (1993). Additionally, in light of our analysis, it is unnecessary to address the issue regarding whether the trial court erred in finding that various ELCRA claims were time-barred.