FEYZ v MERCY MEMORIAL HOSPITAL

Docket No. 246259. Submitted December 14, 2004, at Detroit. Decided January 13, 2005, at 9:00 a.m. Leave to appeal sought.

Bruce B. Feyz, M.D., brought an action in the Monroe Circuit Court against Mercy Memorial Hospital, a private hospital, and members of its Executive Committee and staff, seeking injunctive relief and damages relating to his placement on indefinite probation by the defendants. The plaintiff's complaint included contract, tort, and statutory antidiscrimination claims. The court, Joseph A. Costello, Jr., J., granted summary disposition for the defendants, citing the doctrine of judicial nonreviewability of the staffing decisions of private hospitals, as well as statutory immunity arising from the peer review committee referral of the plaintiff for psychological evaluation. The plaintiff appealed.

The Court of Appeals held:

1. The peer review statute, MCL 331.531(3)(b), generally grants a peer review committee of a hospital immunity for any act or communication within the committee's scope as a review entity. There is no indication in the various civil rights acts specifically excluding a peer review committee. Similarly, there is no indication in the statute that would exclude a peer review committee from compliance with the various civil rights acts. The peer review statute is not absolute. At MCL 331.531(4), it specifically denies immunity for anyone acting with malice, that state of mind that is reckless of law and of the legal rights of others. Acting against statutory rights, such as civil rights, would represent a malicious act.

2. The trial court erred in using the doctrine of judicial nonreviewability of staffing decisions of private hospitals with regard to claims brought under statutes such as the Civil Rights Act. That doctrine does not preclude such claims. The principle of nonreviewability insulates a private hospital from attacks on its staffing decisions more than a public hospital is insulated, but not more than any other private employer.

3. A private hospital is capable of committing torts, and, when it does, it is a subject to be held liable as any other private

corporation. The trial court improperly granted summary disposition against the plaintiff's count of invasion of privacy.

4. A private hospital is subject to the same breach of contract claims as any other private corporation. If the trial court determines that a breach of contract claim may be based on a corporation's violation of its own bylaws, such a claim may be viable despite the nonreviewability doctrine.

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings.

MURRAY, P.J., concurring in part and dissenting in part, agreed with the majority's conclusion that the plaintiff's civil rights claims are subject to judicial review and that the peer review statute does not provide the hospital with immunity to statutory civil rights claims. However, he disagreed with the majority's conclusion that case law does not preclude judicial review of contract and contract-related tort claims relating to a private hospital's decision regarding a physician's staff privileges, because the purpose of the statute granting immunity for the peer review committee would be defeated.

The peer review immunity statute excepts decisions made with malice from immunity. The act of the peer review committee in sending the plaintiff to the Health Professional Recovery Program as a condition of remaining on staff, but with the committee's full knowledge that he had no mental or physical limitations, would constitute malice in the decision-making process. Similarly, to the extent the plaintiff alleged a viable civil rights claim through other allegations, that statutory violation would also fall within the definition of malice in the decision-making process. The remaining tort and contract claims, to the extent they do not rely on the referral to the Health Professional Recovery Program, do not fall within the definition of malice and, so, are barred by the peer review statute, MCL 331.351. The tort claims that do allege improper referral are barred by the doctrine of nonreviewability.

The trial court properly concluded that it could not review the plaintiff's contract and tort claims without intervening in the hospital's decision and the peer review process. This Court should adhere to and support the rule that generally prohibits judicial review of the actions of a private hospital in disciplining a staff physician.

1. HOSPITALS — PEER REVIEW COMMITTEE IMMUNITY.

The immunity afforded by the peer review statute does not extend to decisions made with malice, which would include violations of statutes such as civil rights acts (MCL 333.531).

2. HOSPITALS — PRIVATE HOSPITALS — CIVIL LIABILITY.

> A private hospital is subject to the same potential civil liability of any private corporation that violates an employment statute, breaches a contract, or commits a tort.

*Jeffrey L. Herron* for the plaintiff.

*Kitch Drutchas Wagner DeNardis & Valitutti* (by *Susan Healy Zitterman* and *Karen B. Berkery*) for the defendants.

Before: MURRAY, P.J., and SAWYER and SMOLENSKI, JJ.

SAWYER, J. We are asked in this case to determine whether the doctrine that staffing decisions of private hospitals are not subject to judicial review precludes all such review, including claims brought under statutes such as the Civil Rights Act. We hold that the doctrine does not preclude such claims and reverse in part the trial court's grant of summary disposition dismissing all the plaintiff's various claims against defendant.

Plaintiff is a physician with staff privileges at defendant hospital. The individual defendants hold various administrative posts as the hospital. This action has its roots in a dispute between plaintiff and the hospital administration regarding various standing orders that plaintiff wrote with respect to his patients. Specifically, plaintiff directed the nursing staff, as part of the admissions process, to inquire of patients which medications they were taking at home and how they were taking those medications. Plaintiff explains that, in his experience, patients often do not take medications according to the instructions of the prescribing physician. He indicated that he believed he needed to know how the medications were actually being used by the patients, not merely how the patients were supposed to be taking the medications.

The hospital administration reacted unfavorably to these standing orders. In fact, the nursing staff was directed to ignore the instructions. It was suggested to plaintiff that he raise the issue administratively, apparently with the end purpose of a uniform policy being adopted if merit was found in plaintiff's request. Although plaintiff pursued this route, it did not result in the adoption of a policy incorporating plaintiff's standing orders. The dispute was renewed. Ultimately, plaintiff was placed on indefinite probation, as well as a referral being made for a psychological examination of plaintiff (which plaintiff reports did not result in the diagnosis of a mental illness). Plaintiff thereafter instituted this action, filing multiple claims against defendants.

The trial court granted summary disposition for the defendants, citing the doctrine of judicial nonreviewability of the staffing decisions of private hospitals, as well as statutory immunity arising from the referral of a physician for medical evaluation. Specifically, the trial court opined as follows:

> Each of Plaintiff's claims arise out of activity involving a peer/professional review committee. Defendant asserts *MCL 331.531* as a basis for immunity from liability. *MCL 331.531* grants immunity to hospitals such as Defendant, which act within their scope as a review entity, as did the Defendants in this case.

> Plaintiff is correct that the immunity granted under the statute is "qualified" immunity, that is, immunity only where no malice has occurred, not "complete" immunity as asserted by the Defendants. However, no clear and convincing proof of malice can be found in Plaintiff's brief. Furthermore, according to both *Regualos v. Community Hos*, 364 N.W.2d 723, 726 [140 Mich App 455 (1985)], and *Hoffman v. Garden City Hospital—Osteopathic*, 321 N.W.2d 810 [115 Mich App 773 (1982)], decisions of governing bodies of private hospitals cannot be subjected to judicial review. Therefore, Summary Disposition should be granted

pursuant to *MCR 2.116(C)(8)* upon the basis of the "Michigan Peer Review Statute" *(MCL 331.531)*.

It is clear that all causes of action in this case arise from the activity of the Defendants' peer review board and thereby subjected to the said Peer Review Statute. Therefore, all other issues regarding Summary Disposition of this case need not be addressed.

Because the trial court placed the greater emphasis on the peer review statute, we shall begin our analysis there. MCL 331.531 provides in pertinent part as follows:

(1) A person, organization, or entity may provide to a review entity information or data relating to the physical or psychological condition of a person, the necessity, appropriateness, or quality of health care rendered to a person, or the qualifications, competence, or performance of a health care provider.

(2) As used in this section, "review entity" means 1 of the following:

(a) A duly appointed peer review committee of 1 of the following:

* * *

(iii) A health facility or agency licensed under article 17 of the public health code, 1978 PA 368, MCL 333.20101 to 333.22260.

* * *

(3) A person, organization, or entity is not civilly or criminally liable:

(a) For providing information or data pursuant to subsection (1).

(b) For an act or communication within its scope as a review entity.

(c) For releasing or publishing a record of the proceedings, or of the reports, findings, or conclusions of a review entity, subject to sections 2 and 3.

(4) The immunity from liability provided under subsection (3) does not apply to a person, organization, or entity that acts with malice.

We turn first to plaintiff's allegations regarding violations of various civil rights acts. Plaintiff's complaint included counts alleging violations of the Persons With Disabilities Civil Rights Act, MCL 37.1101 *et seq.*, the Americans With Disabilities Act, 42 USC 12101 *et seq.*, the federal civil rights act, specifically 42 USC 1983 and 1985, and the Vocational Rehabilitation Act, specifically 29 USC 794. Even if the trial court is correct that all of plaintiff's claims arise out of the actions of a peer review committee, the peer review statute does not grant immunity for those actions that violate a civil rights act.

We base this determination on two reasons. First, the peer review statute only grants immunity for "an act or communication within [the peer review committee's] scope as a review entity." MCL 331.531(3)(b). It is not within the scope of a peer review committee to violate someone's civil rights. There is no indication in the various civil rights acts at issue here that peer review committees were excluded from the scope of those acts, nor is there any indication that the peer review statute intended to exclude peer review committees from compliance with the various civil rights acts. Indeed, the fact that immunity under the peer review statute is not absolute is reflected by the fact that § 4 denies immunity to a person, organization, or entity that acts with malice.

Which brings us to the second reason, namely, that we view a violation of a civil rights act as being a malicious act. The following portion of the definition of "malice" from Black's Law Dictionary (5th ed) is particularly apt in this situation: "Malice in law is not necessarily personal hate or ill will, but it is that state of

mind which is reckless of law and of the legal rights of the citizen." The various civil rights acts adopted by the state Legislature and the United States Congress establish the legal rights of the citizens, including plaintiff. If defendants acted in disregard of those rights, doing so represents a malicious act and, therefore, is outside the scope of immunity granted by the peer review statute.

We pause here to address an obvious flaw that permeates defendants' brief on appeal and, to a lesser extent, the trial court's opinion. That flaw is the argument raised that plaintiff is unable to factually support his claims. This is demonstrated by the following passage from defendants' brief on appeal discussing the malice issue: "After reviewing the facts and record before it, the trial court then concluded that *'no clear and convincing proof of malice can be found in Plaintiff's brief.'* " (Emphasis supplied by defendants.) But summary disposition was granted under MCR 2.116(C)(8) (failure to state a claim), not C(10) (no genuine issue of material fact). Furthermore, the trial court's analysis was even more narrow in that it did not even determine if plaintiff had adequately pleaded violations of the various civil rights acts. Rather, the trial court limited its decision to whether plaintiff had adequately pleaded in avoidance of the immunity granted by the peer review statute and in avoidance of the doctrine of judicial nonreviewability of staffing decisions by private hospitals. Therefore, the question whether plaintiff can factually support his claims of civil rights violations is not before us, nor, for that matter, is the question whether plaintiff even adequately plead those causes of action.

The only question before us in this appeal, with respect to the counts of the complaint that allege the statutory civil rights violations, is whether a claim of

such a violation falls outside the scope of immunity granted by MCL 331.531. For the reasons stated above, we conclude that it does. Accordingly, the trial court erred in granting summary disposition under MCR 2.116(C)(8) with respect to counts I through IV of plaintiff's complaint on the basis of the immunity granted by MCL 331.531.

Additionally, plaintiff's complaint contains allegations of invasion of privacy (count V), breach of fiduciary and public duties (count VI), and breach of contract (count VII). The invasion of privacy count is based on plaintiff's allegations that the hospital's Executive Committee, acting on recommendations by the ad hoc investigating committee, referred plaintiff to the state's Health Professional Recovery Program (HPRP). Plaintiff alleges that he cooperated with the referral, submitting to a psychiatric evaluation, which determined that there was no mental health or substance abuse disorder and no reason for plaintiff to participate in an HPRP program.

Count VI (breach of fiduciary and public duties) is somewhat more tenuous. Plaintiff alleges that defendant hospital has a duty to its staff and the community at large to operate the hospital in the interest of public health care and in a manner that permits the staff to meet its professional obligations to patients. Plaintiff alleges that defendants violated these duties by suppressing dialogue and debate among the staff regarding patient care issues, by ignoring the hospital and medical staff bylaws, by improperly influencing members of hospital and staff committees, by intimidating plaintiff, by referring plaintiff to the HPRP, by conspiring to prevent medical staff from documenting errors in medical care, by retaliating against plaintiff, and by taking disciplinary action against plaintiff.

Count VII (breach of contract) specifically alleges that the medical staff bylaws constitute a contract and that defendants repeatedly breached that contract by ignoring unspecified procedural requirements of the bylaws and by committing other unspecified violations of the bylaws.

Turning first to count V, the referral to the HPRP by the Executive Committee would clearly come within the scope of a peer review committee's actions and, although plaintiff alleges that the referral proved unnecessary, plaintiff's complaint raises no allegations in this count that would indicate that the referral was maliciously made. Therefore, our focus turns to plaintiff's argument that the Executive Committee does not constitute a peer review committee under the statute and, therefore, is not entitled to the immunity the statute affords. MCL 331.531(2)(a) does not define "review entity" with specificity or limitation. Indeed, the only restrictions imposed by the statute regarding what constitutes a "review entity" under the statute is that it must be a "duly appointed peer review committee" of one of the institutions listed in the statute. It is undisputed that the hospital is such an institution. Plaintiff, however, disputes that the Executive Committee has been "duly appointed" as a peer review committee. In response, defendants only argue that the ad hoc committee formed to investigate the allegations against plaintiff made by the hospital constitutes a "duly appointed review committee" under the medical staff bylaws. Paragraph 57 of plaintiff's complaint, however, alleges that it is the Executive Committee, not the ad hoc committee, which made the HPRP referral that is the basis for the allegations in count V. The ad hoc committee's status as a peer review committee grants that committee immunity, but that does not make the Executive Committee a peer review committee and,

therefore, does not grant the Executive Committee immunity. We do note that summary disposition to the individual defendants with regard to count V would be appropriate to the extent that the only basis for their liability would be their participation in the ad hoc committee's investigation and the recommendations made to the Executive Committee.

Turning to count VI, we begin by noting that the allegations of duties and breaches of those duties are so vague and nebulous that we are skeptical that count VI could survive a motion under MCR 2.116(C)(8) that directly attacks whether it states a claim in its own right. But, as noted above, the trial court granted summary disposition on the narrow ground that the claim does not survive the grant of immunity under the peer review statute. In this respect, the allegations do not appear to allege liability based on the actions of the ad hoc committee, the only entity that defendant has identified as being a duly appointed peer review committee.[1] Therefore, summary disposition based on the peer review statute was improper.

Turning to count VII, in which, as in count VI, the allegations are extremely vague, we are once again skeptical that it could survive a motion for summary disposition if the motion were decided on broader grounds than that employed by the trial court. But the allegations in this count, such as they are, clearly implicated activity beyond that of the ad hoc committee. Accordingly, plaintiff states (or attempts to state) a cause of action that is broader than the activity that

---

[1] To the extent that any of the specific violations alleged by plaintiff not specifically attributed to the ad hoc committee is, in fact, attributable to the actions of that committee, then summary disposition regarding that portion of the claim would be appropriate, and the trial court may remove that subissue from further consideration.

would come within the statutory grant of immunity. Therefore, while summary disposition of this count may ultimately prove appropriate, it is not appropriate on the ground given by the trial court with respect to the immunity granted by the peer review statute.

Having concluded that, with the possible minor exception of claims against individual members of the ad hoc committee under count V of the complaint, summary disposition under the grant of immunity in the peer review statute was improper, we turn to the other basis cited by the trial court, the doctrine of nonreviewability of staffing decisions by private hospitals. Although, given the state of the law in this area, the trial court's conclusions are understandable, a careful examination of the doctrine and its historical roots reveals that its applicability is not so broad as to prevent plaintiff's cause of action in this case.

The doctrine that staffing decisions at private hospitals are not subject to judicial review has its roots in Michigan jurisprudence in the case of *Hoffman v Garden City Hosp—Osteopathic*, 115 Mich App 773; 321 NW2d 810 (1982), which in turn adopted the decision in *Shulman v Washington Hosp Ctr*, 222 F Supp 59 (D DC, 1963), remanded with instructions 121 US App DC 64; 348 F2d 70 (1965), aff'd on reh 319 F Supp 252 (D DC, 1970), concluding that "the decisions of the governing bodies of private hospitals are not subject to judicial review." *Hoffman, supra* at 778. A review of this principle, however, reveals that there is not a sweeping judicial abstinence from reviewing decisions of private hospitals as suggested by some of the more recent cases and by the trial court in the case at bar. Rather, it is the much more limited proposition that private hospitals are not subject to the same review that would be given a public hospital. That is, a private hospital is a private

employer, not a public employer, and should be treated like a private employer. Therefore, while a private hospital is not subject to the same scrutiny as a public employer in terms of whether the constitutional rights of its employees were violated, the doctrine does not create any greater insulation from scrutiny than that enjoyed by any other private employer.

The issue in *Hoffman* and related cases was whether a private hospital should be treated the same as a public hospital:

> Plaintiffs do not argue that the receipt of federal and local public funds by this private hospital transforms the hospital's action into state action. Rather plaintiffs argue that this private hospital is so "affected with a public interest" as to require that its decisions on staff privileges be subject to judicial review in order to protect the public.
>
> There are no reported cases on this issue in Michigan although our courts have dealt with it in terms of public hospitals. In *Milford v People's Community Hospital Authority*, 380 Mich 49; 155 NW2d 835 (1968), the Court found a denial of due process when a public hospital restricted the privileges of a staff physician without proper standards. See also *Touchton v River Dist Community Hospital*, 76 Mich App 251; 256 NW2d 455 (1977). However, the Court in *Milford*, was careful to note the public/private distinction:
>
> "It is to be noted that we deal here with a public hospital authority and not with a private or charitable institution." *Milford, supra,* 57.
>
> The theory that a private hospital holds a fiduciary duty to exercise its staff decisions reasonably and for the public good apparently finds its root in *Greisman v Newcomb Hospital*, 40 NJ 389; 192 A2d 817 (1963). In that case a private hospital refused to accept an application for admission to its courtesy staff from an osteopathic physician. . . .
>
> The plaintiff filed suit attacking the validity of the bylaws provision. The defendants argued the hospital was

private and could exercise its discretion without judicial interference. The Court rejected the argument, finding instead that the hospital was so "affected with a public interest" as to allow judicial intervention when appropriate. Although *Greisman* dealt solely with a bylaw provision it has subsequently been applied to discretionary decisions. *Davis v Morristown Memorial Hospital*, 106 NJ Super 33; 254 A2d 125 (1969). [*Hoffman, supra* at 776-778.]

The *Hoffman* Court, however, rejected this approach and relied on the decision in *Shulman*.

In one of the earlier and one of the strongest statements on this issue, the Court in *Shulman* . . . concluded that the decisions of the governing bodies of private hospitals are not subject to judicial review. As in the case at bar, *Shulman* involved a suit against a private hospital questioning the power and authority of a hospital to preclude a physician from membership on the staff of the hospital. The Court stated:

"We now reach the specific question involved in the case at bar, namely, whether a private hospital has power to appoint and remove members of its medical staff at will, and whether it has authority to exclude in its discretion members of the medical profession from practicing in the hospital. The overwhelming weight of authority, almost approaching unanimity, is to the effect that such power and authority exist. The rule is well established that a private hospital has a right to exclude any physician from practicing therein. The action of hospital authorities in refusing to appoint a physician or surgeon to its medical staff, or declining to renew an appointment that has expired, or excluding any physician or surgeon from practicing in the hospital, is not subject to judicial review. The decision of the hospital authorities in such matters is final." 222 F Supp 63. [*Hoffman, supra* at 778-779.]

We do see in *Hoffman* the sweeping statement that "the decisions of the governing bodies of private hospitals are not subject to judicial review." *Id.* at 778. But, if we

look at the underpinnings of these decisions, we see that the principle is not quite so sweeping after all.

The plaintiff in *Shulman* was a member of the defendant hospital's "Courtesy Staff," an appointment that must be renewed annually. Dr. Shulman's appointment was not renewed in 1963, prompting the suit against the hospital. *Shulman, supra* at 61, began its analysis by addressing the question of the status of a private hospital:

> A private hospital is one that is owned, maintained and operated by a corporation or an individual without any participation on the part of any governmental agency in its control. The fact that a hospital is operated for the benefit of the public and not for profit, does not detract from its character as a private institution, if it is established and maintained by a private corporation or individual with authority to elect or appoint its own officers and directors.

> This distinction between public and private institutions was formulated by the Court of Appeals of Maryland in *Levin v Sinai Hospital of Baltimore City*, 186 Md 174, 178; 46 A2d 298, 200 [1946], in the following manner:

> "The essential difference between a public and a private corporation has long been recognized at common law. A public corporation is an instrumentality of the State, founded and owned by the State in the public interest, supported by public funds, and governed by managers deriving their authority from the State. Public institutions, such as State, county and city hospitals and asylums, are owned by the public and are devoted chiefly to public purposes. On the other hand, a corporation organized by permission of the Legislature, supported largely by voluntary contributions, and managed by officers and directors who are not representatives of the State or any political subdivision, is a private corporation, although engaged in charitable work or performing duties similar to those of public corporations. . . . So, a hospital, although operated solely for the benefit of the public and not for profit, is nevertheless a private institution if founded and main-

tained by a private corporation with authority to elect is own officers and directors. . . ."

*Shulman, supra* at 62, then discusses the fact that private hospitals are not burdened by the same restrictions or obligations imposed upon a public hospital:

> A private hospital is not a public utility in the legal sense of that term. Neither is the operation of the hospital a public calling, such as that of a common carrier, light or power companies, or a telephone company. . . .
>
> Thus, it was said in *Van Campen v. Olean General Hospital, 210 App. Div. 204, 205 N.Y.S. 554, 558,* affirmed *239 N.Y. 615, 147 N.E. 219*:
>
> "The law does not require a corporation like defendant to furnish its services and accommodations to every one who applies, whether patient or physician. There can be no absolute right in individuals to claim the benefit of its privileges. Such a thing would be impossible. There must be discretion vested in the management to make selection from applicants with regard to accommodations available. It may reject one who has some trivial ailment, and accept another whose needs are greater."
>
> In *Levin* [*supra at* 180], it was stated:
>
> "A private hospital is not under a common law duty to serve everyone who applies for treatment or permission to serve. In the absence of statute, it may accept some applicants and reject others."

*Shulman, supra* at 63, then reaches its conclusion on this point, which was quoted by *Hoffman*. Not quoted by *Hoffman*, however, was the following "exception" noted by *Shulman*:

> The only possible exception is in a case in which there is a failure to conform to procedural requirements set forth in its constitution, by-laws, or rules and regulations. In that event the extent of judicial review is to require compliance with the prescribed procedure. Beyond that, the courts do not interfere. In the instant case, the by-laws, which are a

part of the record on this motion, do not provide any specific procedure. [*Shulman, supra* at 63.]

What the plaintiff in *Levin,* as well as the plaintiffs in the other cases relied on by *Shulman,* sought to do was to have the private hospital at which they enjoyed staff privileges to be subjected to a greater burden to justify its employment decisions than the ordinary private employer. That is, they were arguing that, despite the fact the hospital was a private entity, it should be subjected to the same scrutiny to which a public employer is subjected. It was this principle that was rejected in the early cases.

Support for the view that the nonreviewability doctrine, while including the principle that private hospitals are not subject to the same burdens as public hospitals, does not grant private hospitals any special immunity with respect to staffing decisions can be found by reviewing those earlier cases relied on by *Shulman.* In *Levin, supra* at 179-180, the Maryland Court of Appeals stated:

> It is not necessary on this appeal to consider the question of the extent of a physician's constitutional right to practice his profession in a public hospital. The powers and duties of the officers of a public institution are regulated by statute or municipal ordinance. The powers and duties of the officers of a private corporation are regulated by its charter, constitution and by-laws. It is a general rule that a court of equity will not interfere with the internal management of a corporation, unless the act complained of is fraudulent or *ultra vires.* . . . We hold that a private hospital has the right to exclude any physician from practicing therein, and such exclusion rests within the sound discretion of the managing authorities. . . . A private hospital is not under a common law duty to serve everyone who applies for treatment or permission to serve. In the absence of statute, it may accept some applicants and reject others. Likewise, the directors of a private hospital corpo-

ration, having power to appoint members of its medical
staff, have the authority to remove them from the staff. It
has never been the policy of the State of Maryland to
interfere with the power of the governing body of a private
hospital to select its own medical staff. . . .

In Maryland a court of equity may properly grant
injunctive relief to protect a physician in his right to treat
his own patients in a hospital where its constitution and
by-laws accord him that right, and also to pass upon the
validity of asserted amendments to the constitution and
by-laws for the purpose of determining his right to such
relief. . . .

It is important to note that the *Levin* court did not
distinguish between the responsibilities of public and
private *hospitals*, but between public and private *insti-
tutions*. The private hospital was not accorded special
protection, rather, merely a recognition that it enjoys
the same right to be free from governmental intrusion
that any private corporation enjoys, but which a public
institution may not.

This point is further illustrated by the Virginia
Supreme Court's decision in *Khoury v Community Mem
Hosp, Inc*, 203 Va 236, 245; 123 SE2d 533 (1962),
another case relied on by *Shulman*, in which the court
stated:

The hospital was established pursuant to a charter,
granted by the Commonwealth, conferring upon its public
spirited organizers the right and authority to operate as a
private corporation. That charter is a contract between the
state and the incorporators. One of the unwritten provi-
sions of that contract is that the trustees of the corporation
shall have the right to conduct its affairs as they might, in
their sound discretion, see fit. Inherent in the charter is the
understanding that, except as provided by law, the state
will not interfere in the corporation's internal affairs.

We are of the opinion that when the trustees of a private
hospital, in their sound discretion, exclude a doctor from

the use of the facilities of the hospital, the courts are
without authority to nullify that discretion by injunctive
process. There are no constitutional or statutory rights of
the doctor, or of his patients who wish to be treated in the
hospital by him, which warrant such interference.

The final question to be determined is whether Dr.
Khoury was accorded a fair hearing relative to the denial of
staff privileges in the hospital.

Since we have held that Dr. Khoury had no contractual,
constitutional or statutory right to the use of the hospital
facilities, and since the trustees acted in their sound
discretion to deny him such use, we are of the opinion that
he was not entitled to a hearing with respect to his
exclusions therefrom. We need not consider, therefore,
whether the hearing which was accorded him was a fair
one. [Citations omitted.]

It is noteworthy that the court did not say that there
could not be a contractual or statutory right that the
doctor could enforce because the hospital enjoyed abso-
lute immunity from review of its staffing decisions.
Rather, it decided that there were no such rights con-
ferred by contract, statute or constitution, and therefore
there was no basis for the doctor to obtain judicial review
of the staffing decision. Indeed, Dr. Khoury had raised a
contract claim, which the court rejected not on the basis
of the nonreviewability doctrine, but under a traditional
contract analysis. *Id.* at 242-244.

The following observation by the Appellate Division
of the Superior Court of New Jersey illustrates the
contrast with the line of cases that stands for the
proposition that there is a role for judicial intervention
in staffing decisions of private hospitals. After acknowl-
edging that the role of judicial review in such cases is
limited, the court in *Zoneraich v Overlook Hosp*, 212 NJ
Super 83, 90-91; 514 A2d 53 (1986), commented as
follows:

A non-profit hospital, even though not governmental, is hardly private. It exists to furnish vital health care; its funds come in good part from public and charitable sources; its activities are closely regulated. Hospital boards manage quasi-public trusts, and have a fiduciary relationship with the public. *Berman v Valley Hospital*, 103 *N.J.* 100 [510 A2d 673] (1986); *Doe v. Bridgeton Hosp Ass'n, Inc*, 71 *N.J.* 478 [366 A2d 641] (1976), cert den 433 *U.S.* 914; 97 *S.Ct.* 2987; 53 *L.Ed.2d* 1100 (1977).

In *Guerrero v. Burlington County Mem Hospital*, 70 *N.J.* 344 [360 A2d 334] (1976), the Supreme Court of New Jersey drew heavily upon the administrative agency model to construct a framework for judicial review of hospital decisions. It articulated the need to accommodate the economic interests and procedural rights of the physicians, the expertise of hospital authorities and the desirability of permitting them to exercise their reasonable management judgment in the public interest, and the need for judicial alertness to strike down action that is unreasonable, discriminatory or unfair. The Court concluded that initial reliance should be placed on internal hospital tribunals and remedies to strike the needed balances, and that judicial participation should arise only on a limited basis.

Although state action is not involved and constitutional due process requirements do not apply, *Garrow v. Elizabeth General Hospital and Dispensary*, 79 NJ 549, 563-564 [401 A2d 533] (1979); *See Mendez v. Belton*, 739 F2d. 15 (1 Cir. 1984); *Loh-Seng Yo v. Cibola General Hospital*, 706 *F2d* 306 (10 Cir. 1983), a physician is entitled to fundamentally fair procedures in a non-profit hospital's consideration of staff membership, the extent of privileges and termination. Notice must be given of charges or proposed hospital action before hearing. *Guerrero, supra*, 70 *N.J.* at 359. A qualified right to counsel exists, and a right to disclosure, limited by recognition of competing rights to privilege and confidentiality. *Garrow, supra*, 79 *N.J.* at 566-568. The tribunal must be fair and unbiased.

The contrast between the *Shulman* line of cases and the *Zoneraich* line is not that *Shulman* established

special immunity for private hospitals from review of its staffing decisions. Rather, it is that the *Zoneraich* cases establish a special burden on private hospitals, not shared by other private entities, which burden requires treating them more like public institutions.

Returning to the Michigan cases, as further cases arose, there was a jurisprudential drift of that core holding. In *Dutka v Sinai Hosp of Detroit*, 143 Mich App 170; 371 NW2d 901 (1985), the Court rejected a claim by a physician who was denied staff privileges. Dr. Dutka held the position of office assistant to a staff surgeon, a position that held limited staff privileges. Although Dutka was allegedly assured that he would at some point be elevated to the active staff, he was later asked to withdraw his application. After exhausting his internal remedies, he filed suit, requesting specific performance of an implied contract or, in the alternative, money damages. Relying on *Hoffman*, the Court held that a decision to deny staff privileges was not subject to judicial review. In doing so, however, the Court made a somewhat cryptic observation that "while plaintiff has attempted to plead an action in contract, our reading of the complaint leads us to the conclusion that he actually is seeking judicial intervention into the decision of a private hospital to deny him staff privileges." *Dutka, supra* at 175. The Court then concluded that, even if a contract claim had been adequately pleaded, the only implied contract was one to consider his application for staff privileges, not one to grant him staff privileges. Thus, although somewhat unclear, *Dutka* appears to hold to the earlier view of the issue, namely, that staffing decisions at private hospitals are not subject to the judicial review and equitable relief that would potentially be available in such claims against a public employer. A breach of contract claim, however, is still subject to the traditional analysis, an

analysis that would need to be employed with respect to any such claim against a private employer.

Next, in *Veldhuis v Central Michigan Community Hosp*, 142 Mich App 243; 369 NW2d 478 (1985), the Court reviewed a case of a physician losing staff privileges at a private hospital. The Court rejected the physician's claim, relying on *Hoffman*. While that aspect is unremarkable, the Court also rejected the plaintiff's claim that MCL 333.21513, which, in part, requires the organization of physicians into a medical staff in order to accommodate effective review of the staff, requires a guarantee of procedural due process. The Court did so not only on the basis that nothing in the statute required that the physician be granted due process, but also that if the statute did create such a requirement, it would run afoul of the *Hoffman* rule that precludes judicial review of private hospital's staffing decisions. *Veldhuis, supra* at 246-247. Left undiscussed by *Veldhuis*, however, is exactly how a judicially created rule can render a statutorily imposed rule unenforceable. Thus, not only does *Veldhuis* expand the nonreviewability doctrine beyond its original intent, it does so in a way that expands judicial power and encroaches upon legislative authority.

This Court next considered the *Hoffman* doctrine in *Bhogaonker v Metropolitan Hosp*, 164 Mich App 563; 417 NW2d 501 (1987), in which a physician's employment was terminated as part of a round of budget cuts. The plaintiff sued, alleging breach of contract and similar claims. This Court, similarly to that in *Dutka*, concluded that although the "plaintiff alleged breach of contract in this case, it is clear beyond peradventure that plaintiff is actually seeking judicial intervention into a decision of a hospital to terminate his employment as a physician due to economic necessity. Such a

decision is not subject to review by the circuit court."
*Bhogaonker, supra* at 566. Thus, while broadening the
application of *Hoffman* to an explicit breach of contract
claim, the *Bhogaonker* Court nevertheless felt com-
pelled to state that the plaintiff's claim was not a breach
of contract claim.

The principle was expanded even further in *Sarin v
Samaritan Health Ctr*, 176 Mich App 790; 440 NW2d 80
(1989), in which this Court rejected claims alleging
breach of contract, tortious interference with a con-
tract, and tortious interference with a business rela-
tionship, relying on *Hoffman* and *Veldhuis*. With re-
spect to the latter case, *Sarin* specifically quoted from
the portion of the *Veldhuis* opinion that rejected the
claim of a violation of statute as being inconsistent with
*Hoffman*. The *Sarin* Court also explicitly relied on
*Dutka* and *Bhogaonker*, finally reaching this conclu-
sion:

> While there may be some situations where a court
> should be able to consider a hospital's action without
> violating the principle of nonreviewability, this case is not
> of that sort. Plaintiff's various claims revolve around
> questions regarding who the hospital review proceedings
> advanced, the composition of the board, its sources of
> information, claimed inaccurate information, and the ac-
> tual decision to suspend and terminate his privileges.
> Moreover, plaintiff's tort claims are based on alleged viola-
> tions of the bylaws. Thus, we believe the trial court
> properly concluded that it could not review plaintiff's
> claims without intervening in the hospital's decision and
> interfering with the peer review process. In so ruling, we
> repeat our adherence to and support of the rule that
> prohibits judicial review of the action of a private hospital
> in denying staff privileges to a doctor. [*Sarin, supra* at 795.]

This Court did limit the expansion of the doctrine of
nonreviewability somewhat in *Long v Chelsea Commu-*

*nity Hosp,* 219 Mich App 578; 557 NW2d 157 (1996).
After reviewing the basic principle that a private hos-
pital's staffing decisions are not subject to judicial
review, the Court made the following observations:

> The above law is limited to disputes that are contractual
> in nature. We decline to articulate a broad principle that a
> private hospital's staffing decision may *never* be judicially
> reviewed. Indeed, in doing so, we reiterate the proposition
> from *Sarin* that, under some circumstances, a court may
> consider a hospital's decisions without violating the non-
> reviewability principle. *Sarin, supra* at 795. Private hospi-
> tals do not have carte blanche to violate the public policy of
> our state as contained in its laws. Had plaintiff in this case
> asserted that defendants violated state or federal law, we
> may have chosen to review his claim. In this case, however,
> plaintiff did not assert a violation of civil rights or a
> violation of a state statute. The same is true in some of the
> cited cases.
>
> Further, previous decisions support this reasoning. In
> *Hoffman, supra,* this Court quoted with approval the
> proposition that hospital authorities may refuse to appoint
> a physician to its medical staff, may decline to renew an
> expired contract, and may exclude a physician from prac-
> ticing in the hospital—all without judicial review of those
> decisions. [*Long, supra* at 586-587.]

While the *Long* Court correctly observed that the
nonreviewability doctrine does not preclude consider-
ation of a violation of law, such as a claim under a civil
rights act, it erroneously followed *Sarin* in suggesting
that a claim of a breach of contract or breach of bylaws
claim cannot be maintained.

> Plaintiff further argues that his claim is not a constitu-
> tional due process argument, but rather is based on a
> breach of defendants' bylaws, and thus this Court should
> review it. Plaintiff's claim on this issue fails in light of
> *Sarin.* A breach of contract and breach of bylaws claim

would necessarily invoke a review of the hospital's decision to terminate its employees. *Sarin, supra* at 794. [*Long, supra* at 588.]

*Long* did, however, step back from making the principle as encompassing as the above quotation makes it sound, acknowledging that a claim of breach of bylaws might be maintained in the proper case.

> Plaintiff next argues that his circumstances fall within the exception outlined in *Sarin*: "[T]here may be some situations where a court should be able to consider a hospital's action without violating the principle of nonreviewability . . . ." *Id.* [at 795.] Because plaintiff failed to provide a copy of the bylaws required under MCR 2.113(F)(1), this Court has no way of reviewing whether the exception applies. [*Long, supra* at 588.]

The failure in *Long*, like *Sarin* and other cases, is that it does not examine the roots of the principle of nonreviewability and discover that a breach of the bylaws is recognized as an exception to the principle. Moreover, while *Long* accepts the concept that the principle applies to breach of contract claims, it overlooks the origins of the doctrine and that the doctrine was not intended to apply to contract claims. Thus, when the plaintiff in *Long* argued that "his claim is not a constitutional due process argument, but rather is based on a breach of defendants' bylaws, and thus this Court should review it," *id.*, the plaintiff was exactly correct when the principle is viewed in its original incarnation.

The nonreviewability doctrine was aptly summarized by the Tennessee Supreme Court in *Lewisburg Community Hosp v Alfredson*, 805 SW2d 756, 759 (1991):

> We conclude that Hospital staffing decisions involving specialized medical and business considerations are entitled to deference from the courts; however, in the words of the Court of Appeals:

"Like any other legal entity, hospitals are capable of breaching contracts, committing torts, or violating others' constitutional or statutory rights. When they do, they are no less subject to the courts' jurisdiction than anyone else. [*Alfredson v Lewisburg Community Hosp*, 1989 Tenn App Lexis 746; 1989 WL 134739 Tenn Ct App.]."

In sum, while some of the decisions of this Court have drifted from the formulation of the nonreviewability doctrine, that doctrine, when viewed in historical perspective, stands for the modest proposition that a private hospital is subject only to the legal obligations of a private entity, not to the greater scrutiny of a public institution. It is subject to the same potential civil liability of any private corporation that violates an employment statute, breaches a contract, or the like.

In terms of Michigan law, only the *Long* decision is precedentially binding. And that decision is clear on the point that private hospitals are subject to the various civil rights acts. Accordingly, the trial court improperly dismissed counts I through IV of plaintiff's complaint on the basis of the nonreviewability doctrine as that doctrine does not apply to alleged statutory violations.

With respect to count V (invasion of privacy), the *Long* decision is silent on the issue of tort liability of private hospitals. Accordingly, we are free to remain true to the original scope of the nonreviewability doctrine and conclude, as did the Court in *Alfredson*, that private hospitals are capable of committing torts and, when they do, are as subject to be held liable as any other private corporation. Accordingly, we conclude that summary disposition was improperly granted on the basis of the nonreviewability doctrine on this count as well.

Turning to count VI (breach of fiduciary and public duties), this count seems to be related to the heart of

what the nonreviewability doctrine was designed to address—claims that hold private hospitals to a higher standard than other private corporations, seeking to impose a public duty akin to public hospitals. Accordingly, we conclude that the trial court did correctly apply the nonreviewability doctrine to this count.

Finally, as for count VII (breach of contract based on a violation of hospital bylaws), it is unclear whether *Long* would control. *Long* did not directly address this issue, concluding that the breach of bylaws claim was not adequately pleaded. But the *Long* Court did state that a breach of contract or breach of bylaws claim is potentially viable if it does not violate the nonreviewability doctrine. As discussed above, in our view, breach of contract and breach of bylaws claims do not violate the doctrine unless they seek to impose greater liability on a private hospital than what another private employer would be subject to under the law. The question whether Michigan law recognizes a breach of contract claim based on the breach of corporate bylaws is not before us; therefore, we need not address that issue. Because the trial court broadly applied the nonreviewability doctrine to conclude that no breach of contract derived from a breach of bylaws could be maintained, the trial court erred in granting summary disposition on that basis. The trial court may consider summary disposition of this count on another basis, but we caution the trial court that it cannot be granted on the basis that private hospitals enjoy a special immunity from such claims. Rather, private hospitals are subject to the same breach of contract claims as any other private corporation. Therefore, if the issue is again raised, the trial court must determine whether a breach of contract claim may be based on a corporation's violation of its own bylaws under Michigan law. If the answer to that question is "yes," and if plaintiff has

adequately pleaded such a claim, the claim is viable despite the nonreviewability doctrine. But plaintiff's claim does not lack viability merely because the defendant is a private hospital rather than some other private corporation.

In sum, the trial court properly granted summary disposition on count VI (breach of fiduciary and public duties) and on those nonstatutory claims that are based on the actions of the ad hoc committee while acting in its role as a peer review committee.

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs, no party having prevailed in full.

SMOLENSKI, J., concurred.

MURRAY, P.J. (*concurring in part, dissenting in part*). I agree with the majority's conclusion that plaintiff's statutory civil rights claims against defendants are subject to judicial review and that the peer review statute does not provide the hospital immunity to such claims. However, I disagree in part with the rationale underpinning the immunity issue, and with the majority's conclusion that *Hoffman v Garden City Hosp-Osteopathic*, 115 Mich App 773; 321 NW2d 810 (1982), and its progeny do not preclude judicial review of contract and contract-related tort claims that encompass a challenge to a private hospital's decision regarding a physician's staff privileges.

### I. MCL 331.531

As the majority notes, MCL 331.531(3)(b) and (4) provide that a peer review entity is immune from civil liability for "an act or communication within its scope

as a review entity," unless done with malice. The majority then concludes that a discrimination claim is not barred by the statute's grant of immunity because (1) an unlawful discriminatory act is not within the scope of a peer review committee, and (2) an unlawful act of discrimination constitutes malice. According to the established case law defining malice under this statute, I agree with the second proposition. However, the majority's reading of MCL 331.531(3)(b) is too narrow.

In determining whether an act or communication is within the scope of a review committee, we cannot examine the legal result of the act or communication; instead, we must focus on the subject matter on which the initial act or communication complained of was made, i.e., the decision not to retain a physician, to suspend a physician, etc. "Scope" in this context means "range of operation." *Webster's New Collegiate Dictionary (1980)*. See, also, *Backus v Kauffman (On Rehearing)*, 238 Mich App 402, 409; 605 NW2d 690 (1999) (defining scope of authority in the context of the governmental immunity statute). Otherwise, every time there is a potential for legal liability, there would be no immunity, which would defeat the purposes of the statute. As a result, I disagree with that part of the majority's analysis of MCL 331.531(3)(b).

More importantly, the majority has overlooked the definition of malice applied by this Court in both *Regualos v Community Hosp*, 140 Mich App 455, 463; 364 NW2d 723 (1985), and *Veldhuis v Allan*, 164 Mich App 131, 136-137; 416 NW2d 347 (1987). In *Veldhuis*, we adopted the defamation definition of malice to define the statutorily undefined "malice" found in MCL 331.531:

We agree with defendant Davis Clinic that the definition of malice applicable in defamation actions also seems appropriate in the context of MCL 331.531; MSA 14.57(21). See *Regualos* [*supra* at 463], citing *Lins v Evening News Ass'n*, 129 Mich App 419; 342 NW2d 573 (1983). Applying that definition, the statutory immunity does not apply only if the person supplying information or data does so with the knowledge of its falsity or with reckless disregard of its truth or falsity. 129 Mich App 432. Similarly, a review entity is not immune from liability if it acts with knowledge of the falsity, or with reckless disregard of the truth or falsity, of information or data which it communicates or upon which it acts. [*Veldhuis, supra* at 136-137.]

See, also, *Savas v William Beaumont Hosp*, 216 F Supp 2d 660, 668-669 (ED Mich, 2002).

Admittedly, there is no discussion in either *Regualos* or *Veldhuis* regarding *why* the defamation definition of malice applies to this statute's reference to malice. Nonetheless, since that definition has been adopted and utilized in both our published and unpublished decisions, as well as by the federal courts applying Michigan law, we must, at minimum, apply that definition. If we do not, we must explain why.

Here, plaintiff alleges that the Medical Staff Executive Committee, in dealing with plaintiff, failed to adhere to the hospital bylaws and procedures. These failures resulted, according to the complaint, in violations of state and federal statutes, as well as common-law claims for breach of contract and torts. There can be no dispute that the Executive Committee, which oversees the medical staff and makes all decisions regarding the discipline of medical staff members, is a review entity as defined by the statute. MCL 331.531(2)(a) and (b). Additionally, the bylaws grant the Executive Committee the authority to create a "special

committee," such as the ad hoc committee, to investigate matters submitted to the Executive Committee.

Because the Executive Committee was a review entity, its decisions are immune unless done with malice. In reviewing the detailed allegations within plaintiff's 157-paragraph complaint, plaintiff alleges that defendants referred him to the Health Professional Recovery Program (HPRP) with full knowledge that he had no mental or physical limitations. This allegation, which is the foundation for plaintiff's disability discrimination claims, fits within the definition of malice as articulated in *Veldhuis*. In other words, plaintiff's claim alleges that the Executive Committee sent him to the HPRP with knowledge that plaintiff had no impairment that qualified him for a referral or was reckless in disregarding that information when acting. This allegation falls squarely within the term "malice" as defined in *Veldhuis*. Moreover, to the extent that plaintiff has alleged a viable civil rights claim through other allegations, this too would fall within the definition of malice. Legal malice is defined as "[t]he intent, without justification or excuse, to commit a wrongful act." Black's Law Dictionary (7th ed). As counsel acknowledged during oral argument, discrimination claims may fall within the legal definition of malice because of the falsity (or, in discrimination terms, pretext) of the offered reasons for an act. It is also true that discrimination generally must be intentional to be actionable. See *Harville v State Plumbing & Heating, Inc*, 218 Mich App 302, 315-319; 553 NW2d 377 (1996). Finally, through the state's civil rights acts, the Legislature has specifically authorized these claims to be brought against hospitals and their employees. Thus, the immunity under MCL 331.531 would not bar otherwise valid discrimination claims. *Mack v Detroit*, 467 Mich 186,

195 and n 9; 649 NW2d 47 (2002), citing *Manning v Hazel Park*, 202 Mich App 685, 699; 509 NW2d 874 (1993).

However, plaintiff's remaining tort and contract claims, to the extent they do not rely upon the referral to the HPRP, do not fall within the definition of malice and are barred under the statute. MCL 331.351. And, as shown below, those torts that do allege an improper referral are barred under the nonreviewability doctrine.

## II. NONREVIEWABILITY DOCTRINE

In light of the obiter dictum in *Long v Chelsea Community Hosp*, 219 Mich App 578, 587; 557 NW2d 157 (1996),[1] the majority is correct in its holding that courts can and will review claims made by physicians that a private hospital has violated state statutory law, such as the Persons with Disabilities Civil Rights Act, MCL 37.1101 *et seq.* See, e.g., *Samuel v Herrick Mem Hosp*, 201 F3d 830, 834-835 (CA 6, 2000) (holding that district court properly reviewed statutory antitrust and discrimination claims).

However, to the extent that the majority holds that a contract or certain contract-related tort claims challenging a private hospital's staffing decision may be reviewed by the courts, I respectfully disagree. That is because our case law has squarely held that any contract claim and certain contract-related tort claims that require courts to inquire into the hospital's decision are not subject to judicial review.

The majority's analysis of the underpinnings for the nonreviewability doctrine is not complete. It is certainly

---

[1] *Long* did not involve a civil rights claim, so any statements in the opinion regarding civil rights claims and the nonreviewability doctrine were unnecessary to the resolution of the case.

true that one of the issues decided by the foundational case of *Shulman v Washington Hosp Ctr*, 222 F Supp 59 (D DC, 1963) was that a private hospital's decision was not subject to the same constitutional prohibitions as the decision of a public hospital. However, the *Shulman* Court provided an additional rationale to support its holding that courts should refrain from reviewing staffing decisions of private hospitals, the rationale primarily being that courts are ill-equipped to decide such issues:

> *There are sound reasons that lead the courts not to interfere in these matters. Judicial tribunals are not equipped to review the action of hospital authorities in selecting or refusing to appoint members of medical staffs, declining to renew appointments previously made, or excluding physicians or surgeons from hospital facilities.* The authorities of a hospital necessarily and naturally endeavor to their utmost to serve in the best possible manner the sick and the afflicted who knock at their door. Not all professional men, be they physicians, lawyers, or members of other professions, are of identical ability, competence, or experience, or of equal reliability, character, and standards of ethics. The mere fact that a person is admitted or licensed to practice his profession does not justify any inference beyond the conclusion that he has met the minimum requirements and possesses the minimum qualifications for that purpose. Necessarily hospitals endeavor to secure the most competent and experienced staff for their patients. Without regard to the absence of any legal liability, the hospital in admitting a physician or surgeon to its facilities extends a moral imprimatur to him in the eyes of the public. Moreover not all professional men have a personality that enables them to work in harmony with others, and to inspire confidence in their fellows and in patients. These factors are of importance and here, too, there is room for selection. *In matters such as these the courts are not in a position to substitute their judgment for that of professional groups. [Shulman, supra* at 64 (emphasis added).]

Thus, it was not just the legal significance between a public and private hospital that drove the *Shulman* decision. It was also the court's policy choice to refrain from intervening in an area in which it had no expertise, and in which the hospital officials had all the experience, duties, and incentives to ensure a qualified medical staff.

Significantly, this rationale has been carried forward into Michigan case law. In *Hoffman,* for example, our Court, citing and adopting *Shulman,* noted that the majority of jurisdictions had held that "a private hospital has the power to appoint and remove members *at will without judicial intervention.*" *Hoffman, supra* at 778 (emphasis added). The rule is so concrete that in *Hoffman* we quoted with approval the *Shulman* Court's pronouncement that "[t]he decision of the hospital authorities *in such matters is final.*" *Id.* at 779 (emphasis added).

To be more precise, *Shulman* and *Hoffman* both recognize that a public hospital is subject to constitutional safeguards such as due process, while a private hospital is not. But that rather obvious conclusion does not go hand-in-hand with the holding that "such matters," i.e., a decision affecting a physician's staff privileges, are "final" and unreviewable. Indeed, if the *Shulman* holding were based solely on the public/private hospital distinction, the holding would merely be that courts will not review due process or other constitutional challenges to a private hospital's decision. But *Shulman* and *Hoffman* went much further, stating that a hospital's decisions are final, for which there should be no judicial interference. What explains that rather broad holding is the previously quoted explanation from *Shulman* that courts have decided that they are so ill-equipped to review such

decisions that they will not do so absent an allegation that the hospital violated a state or federal statutory provision.

With this in mind, our courts have rejected requests to review private hospital decisions on physician staffing issues even when the challenges are brought as contract and contract-related tort claims. We recently recognized this principle in *Derderian v Genesys Health Care Systems*, 263 Mich App 364, 376-377; 689 NW2d 145 (2004):

> Rather, these cases merely state that *the staffing decisions of private hospitals are not subject to judicial review. Hoffman* [*supra* at 778-779]; *Regualos* [*supra* at 461]. This doctrine does not arise from a limitation on the court's authority, but, *in part,* from the distinction between public and private hospitals. In *Hoffman,* for example, the Court acknowledged that precedent required public hospitals to afford due process to physicians, *Milford v People's Community Hosp Auth,* 380 Mich 49; 155 NW2d 835 (1968); *Touchton v River Dist Community Hosp,* 76 Mich App 251; 256 NW2d 455 (1977), but recognized and chose to follow the majority position that private hospitals, on the other hand, have "the power to appoint and remove [staff] members at will without judicial intervention." *Hoffman, supra* at 778. *Since* Hoffman, *this Court has refrained from reviewing numerous claims, framed in various ways, that implicate the hospital's decision and the basis for its decision,* see e.g., *Sarin v Samaritan Health Ctr,* 176 Mich App 790, 794; 440 NW2d 80 (1989); *Veldhuis* [*supra* at 247], while "declin[ing] to articulate a broad principle that a private hospital's staffing decisions may *never* be judicially reviewed," *Long* [*supra* at 586]. [Emphasis altered in part.]

In point of fact, *Sarin* involved claims of breach of contract, tortious interference with a contract, and tortious interference with advantageous business relationships, all based on the hospital's decision to termi-

nate the plaintiff's staff privileges. *Sarin, supra* at 791-792. Yet, we rejected the plaintiff's request to review these claims because of the *Hoffman* nonreviewability rule:

> Plaintiff's various claims revolve around questions regarding who the hospital review proceedings advanced, the composition of the board, its sources of information, claimed inaccurate information, and the actual decision to suspend and terminate his privileges. Moreover, plaintiff's tort claims are based on alleged violations of the bylaws. Thus, *we believe the trial court properly concluded that it could not review plaintiff's claims without intervening in the hospital's decision and interfering with the peer review process. In so ruling, we repeat our adherence to and support of the rule that prohibits judicial review of the action of a private hospital in denying staff privileges to a doctor.* [*Sarin, supra* at 795 (emphasis added).]

Likewise, in *Long* this Court upheld the trial court's decision refusing to review, on the basis of *Hoffman, Sarin*, and other cases, the plaintiff's breach of contract and promissory estoppel claims. *Long, supra* at 586-588.[2] See, also, *Muzquiz v W A Foote Mem Hosp, Inc*, 70 F3d 422, 430 (CA 6, 1995) (affirming district court's refusal to review physician's breach of contract claims, but reviewing the federal antidiscrimination claims).

Federal courts applying Michigan law have come to the same conclusion. In *Samuel*, the United States Court of Appeals for the Sixth Circuit held that the district court could not review the plaintiff physician's

---

[2] Although "promissory estoppel is akin to a contract claim," *Long, supra* at 588, tortious interference with contract and tortious interference with advantageous business relations are clearly distinct torts. *Winiemko v Valenti*, 203 Mich App 411, 418 n 2; 513 NW2d 181 (1994); *Feaheny v Caldwell*, 175 Mich App 291, 300-301; 437 NW2d 358 (1989). These torts nonetheless fell within the *Hoffman* rule because they were so closely enmeshed with the contract claims that court review would still necessitate interfering with the hospital's decision. *Sarin, supra* at 795.

claim of tortious interference with contractual relations and business relationship because Michigan "follows an even more stringent rule that does not allow any review, even to ensure that the methods put forth by hospital for peer review are followed." *Samuel, supra* at 835. The court did note, however, that Michigan has an exception to the nonreviewability doctrine when hospitals are accused of violating state or federal laws, such as antidiscrimination laws. *Id.*

Similarly, in *Savas,* the plaintiff brought numerous statutory civil rights claims as well as tort claims for tortious interference with an advantageous business relationship and intentional infliction of emotional distress. These claims were based on the hospital's decision to suspend the plaintiff's clinical privileges. The district court granted summary judgment for the hospital, holding that the tort claims could not be reviewed because to do so would necessarily involve a review of the hospital's decision regarding the plaintiff's staff privileges:

> Michigan law states that there can be no judicial review in the form of a tort claim of a private hospital's decision to terminate medical staff privileges, even to ensure that it was not arbitrary, capricious or unreasonable. [Citations omitted.] This doctrine was recently examined and upheld by the Sixth Circuit in *Samuel [supra]*.
>
> Plaintiff cannot avoid the rule of judicial nonreviewability by characterizing her claims as "tortious interference" or "intentional infliction of emotional distress." This would "necessarily involve a review of the decision to terminate and the methods behind that decision, thus making a mockery of the rule that prohibits judicial review of such decisions by private hospitals." [*Savas, supra* at 668.]

Hence, unlike the majority, I do not believe that post-*Hoffman* Courts, such as *Long* and *Sarin,* went beyond *Hoffman's* public/private hospital ruling when

they refused to review contract and certain tort claims that necessitated interfering with the hospital's decision regarding a physician's staff privileges. Rather, those courts utilized one part of the *Hoffman* and *Shulman* rationales in coming to their respective conclusions.

In my view, the majority cannot reach the conclusions that it has without reversing *Sarin*,[3] and ignoring some aspects of *Long*. The *Long* Court specifically held that the nonreviewability doctrine applies "to disputes that are contractual in nature," *Long, supra* at 586, and that the breach of contract and promissory estoppel claims brought in that case would not be reviewed under that doctrine. *Id.* at 587-588. What the Court could not conclude, because of insufficient evidence, was whether the facts of that case might fall within the *exception* to the doctrine. *Id.* at 588. Thus, it is quite clear that *Long* does preclude breach of contract claims in cases such as this, and that *Sarin* bars tort claims that are "contractual in nature" and that challenge the hospital's staffing decision. *Long, supra* at 587 n 4; *Sarin, supra* at 791-792. Hence, without overruling *Sarin* and parts of *Long* (which cannot be done under MCR 7.215[J][1]), the majority cannot reach the legal conclusions that it has reached today.

In the present case, plaintiff's invasion of privacy, breach of fiduciary and public duties, and breach of contract claims all revolve around the decisions of, and statements made by, members of the peer review entity during their examination of plaintiff's case. According to his complaint, plaintiff's invasion of privacy claim is based on defendant's "conditioning resolution of his disciplinary actions . . . on the outcome of the HPRP

---

[3] Although *Sarin* was decided before 1990, it should still be followed under stare decisis principles unless it is distinguishable or overruled.

process . . . ." Similarly, plaintiff's claims of breach of fiduciary and public duties and breach of contract are based on the actions and decisions of the peer review entity regarding plaintiff's situation. Thus, as in *Sarin*, I would hold that "the trial court properly concluded that it could not review plaintiff's claims without intervening in the hospital's decision and interfering with the peer review process. In so ruling, we [should] repeat our adherence to and support of the rule that prohibits judicial review of the action of a private hospital" in disciplining plaintiff, a staff physician. *Sarin*, *supra* at 795.

I would affirm the dismissal of plaintiff's tort and contract claims. Otherwise, and with the one noted exception regarding the majority's analysis of MCL 331.531, I join in the majority opinion.[4]

---

[4] As defendants point out, there may be other reasons why plaintiff's civil rights claims cannot be maintained. For example, claims under 42 USC 1983 generally must be brought against governmental entities or individuals acting under color of law. See, e.g., *Wyatt v Cole*, 504 US 158, 161; 112 S Ct 1827; 118 L Ed 2d 504 (1992). However, the trial court did not address these many issues, and should do so in the first instance.